J. A. KING v. M. W. DICKSON, Defendant, MARY BALDWIN, Intervenor, Appellants.

**Deeds:** CONSTRUCTION. A lot belonging to a firm, on their becoming insolvent, passed under a general assignment to the assignee. The assignee conveyed other of the firm's realty to a trustee, the deed concluding with a clause stating that it was the intention to convey all unsold realty received under the assignment. The trustee executed an agreement to convey to the firm any surplus remaining after settling the indebtedness. Subsequently, he conveyed to the intervenor certain realty specifically described, the description concluding with the statement that it was intended to convey all the unsold realty deeded to him by the assignee of the firm. The lot in question was not described in either of the deeds to and from the trustee and had not been previously disposed of when the deeds were made. Subsequently each of the two members of the firm conveyed to his wife an undivided one-half interest in the lot, and they transferred it to defendant, as agent, for the purpose of sale, who sold it, and paid to one wife her share of the proceeds of the sale. The other wife assigned her interest in the proceeds to plaintiff, who sues to recover such money from defendant. The intervenor filed her claim under the deed from the trustee, and defendant answered, by admitting his possession of the money, and declaring his readiness to pay it as the court might direct. *Held*, that no title to the lot passed from the firm's assignee to the trustee, nor from the trustee to intervenor, since those conveyances only passed title to the realty specifically described, and hence plaintiff was entitled to recover the balance of the purchase money remaining in defendant's hands.

GIVEN, C. J., dissenting in part.

**Decree Signed:** BECOMES FINAL JUDGMENT WHEN: *Recording.* A decree though signed and approved by the judge, and placed on file, is not a final adjudication until recorded.

*Appeal from Story District Court.*—HON. B. P. BIRDSALL, Judge.

WEDNESDAY, MAY 22, 1901.

THE plaintiff states as his cause of action that about May 16, 1896, Mary Baldwin and Marietta Maxwell were the owners of certain real estate in Story county, which they conveyed to defendant Dickson, in trust for themselves, and in part as security for a certain liability he assumed for Mary Baldwin; that Dickson executed an agreement to Marietta Maxwell, by which he was to sell the real estate within a certain time, and pay one-half the proceeds to Marietta Maxwell, and in default of sale to reconvey to said Maxwell; that on the twentieth day of May, 1897, he sold said real estate, and received therefor $1,800, one-half of which belonged to Marietta Maxwell; that on the twenty-third day of July, 1897, she, for valuable consideration, sold, assigned, and transferred to plaintiff her said claim, and that the same is his property, and due and unpaid, wherefore he asks judgment against the defendant for $900. Defendant Dickson answered, admitting that he received the conveyance from Mary Baldwin and Marietta Maxwell; that he executed the agreement attached to plaintiff's petition, but says that his connection was as agent for Marietta Maxwell and Mary Baldwin; that as their agent he took the conveyance to sell the land, as well as to secure a loan of $500 to Mary Baldwin, he to receive $50 commission in case of sale. Further answering, he sets up a decree in the case of Smith, administrator, against Baldwin & Maxwell and others as a full adjudication against the right of the plaintiff to recover in this action. He alleges that after said decree he became the agent of Mary Baldwin, alone, for the sale of said land; that he sold it under said employment for $1,800; that he paid Mary Baldwin $875 of the proceeds, and to himself a commission of $50; and that he now has in his hands $875, and holds the same subject to the judgment and order of the court. Mary Baldwin intervened, alleging that she was the absolute owner of said lot 1, that she employed Dickson to sell the same, that he did sell it to

J. O. French for $1,800, that he paid her $875 thereof, that he is entitled to $50 compensation, and that the $875 in his hands are due to intervenor. She says that the plaintiff has no interest therein by assignment or otherwise. She asked judgment against Dickson for $875, with interest, and that plaintiff's petition be dismissed. As an amendment to her petition of intervention, Mary Baldwin alleges that Marietta Maxwell had no interest in the proceeds of said sale; "that the title and right of said proceeds in the hands of N. W. Dickson was fully settled and determined by the adjudication of this court in the case of I. L. Smith, administrator vs. Baldwin & Maxwell, F. M. Baldwin, J. W. Maxwell, Mary Baldwin, Marietta Maxwell, and N. W. Dickson, in which case the title to said property was by decree and judgment found to be the absolute property of intervenor, Mary Baldwin; that plaintiff's assignor was a party thereto, and had full notice of such proceedings, and no appeal was taken therefrom." She alleges that because of the facts stated the plaintiff has no interest in the subject-mater of this case, and that the proceeds of the sale in the hands of Dickson are her sole property. The plaintiff, for answer to the petition of intervention, admitted that Dickson had sold the land for $1,800, that he had paid intervenor $875, that plaintiff claims the balance, and that there is $875 in the hands of Dickson. Plaintiff answered the intervention as follows: "Comes now the plaintiff in the above-entitled cause, and for answer to amendment to petition of intervention says that he denies generally and specifically each and every allegation contained in the defendant's amendments; wherefore he prays for the verdict as in his first petition." The cause was submitted to the court, and the court found that the plaintiff, King, is entitled to recover of the defendant, Dickson, said $875, and judgment was rendered accordinly, and intervenor's petition was dismissed, and from this judgment the defendant and intervenor appeal.—*Affirmed.*

*Geo. W. Dyer* and *E. H. Adison* for appellant.

*Funson & Gifford* and *Dyer & Stevens* for appellee.

GIVEN, C. J.—I. The questions to be considered involve an inquiry into the title to the lands for which the money in dispute was realized. The facts concerning the title are substantially as follows: On October 25, 1888, Mary Guthrie Brodie executed her will, providing as follows: "I give, devise, and bequeath my estate and property, real and personal, after my debts are paid for sickness and funeral expenses, to my sister, Isabelle Guthrie, for her maintenance, as long as she may live, and at her death, after any necessary debts occasioned by her sickness and funeral expenses are paid, I give, devise, and bequeath my estate and property, real and personal, as follows; that is to say." Following this are six specific devises of money in the sum of $100 each to persons named, and then the following: "To Baldwin & Maxwell, Story county, Iowa, a firm composed of F. M. Baldwin and J. W. Maxwell, I give, devise, and bequeath lot one (1) in the southeast quarter ($\frac{1}{4}$) of the southwest quarter ($\frac{1}{4}$) of section twenty-two (22), township eighty-two (82) north, of range twenty-two (22) west of the fifth (5th) P. M., Iowa, containing two and six-hundredths (2.06) acres, as the same is known and designated on a recorded plat now on file in the recorder's office of Story county, Iowa. And, after the above-named parties have been paid the several amounts bequeathed to them, I desire that the balance of my property, personal and real, be equally divided between David Guthrie of Montreal, Canada, Mary Guthrie of Montreal, Canada, and Mary Peters of Carmonistee, Forfeshire, Scotland. Mrs. Brodie died June 2, 1891. Her will was probated in September following, and Isabelle Guthrie took possession of the property, and continued to occupy and use the same until her death, in February, 1895. On October 25, 1891, Balwin & Maxwell made a deed of general assignment to Jay A. King for

the benefit of their creditors, of their property, real and personal, "in which they have any right or interest whatsoever; the same being more fully and particularly described and enumerated in the schedule thereof to be hereto annexed." On July 1, 1892, Baldwin & Maxwell made a settlement with their creditors, J. V. Farwell & Co. advancing the money for that purpose, and taking a conveyance from Jay A. King, assignee, to H. J. Liggett, as trustee, to secure the advance, which conveyance was approved by the court. This conveyance describes specifically the real estate conveyed, and concludes as follows: "The intention being to hereby convey to the said Howard J. Liggett all the real estate in Story county, Iowa, received by him by virtue of the deed of assignment above referred to, excepting only such as has been by him conveyed, as such assignee, to other parties previously to this date." Mr. Liggett executed to Baldwin & Maxwell a writing agreeing to return to them any surplus after selling sufficient of the property to reimburse Farwell & Co. On October 31, 1894, Mr. Liggett, as trustee, sold and conveyed to Mary Baldwin, of the property received by him from the assignee, certain real estate specifically described, the description concluding as follows: "The intention of this conveyance being to convey all the real estate unsold that was conveyed to him by J. A. King, assignee, for Baldwin & Maxwell, and situated in Story county, state of Iowa." Said lot 1 is not described in either the deed of general assignment or in the deeds to and from Liggett, trustee. It will be observed that these conveyances were all made after the death of Mrs. Brodie, and during the lifetime of Isabelle Guthrie, and while she was in the use and possession of the property. On June 20, 1895, Mr. Baldwin conveyed to his wife, Mary, the undivided one-half of said lot 1, and on February 18, 1896, Mr. Maxwell conveyed all his interest in said lot 1 to his wife, Marietta. On May 16, 1896, Mr. and Mrs. Baldwin and Mr. and Mrs. Maxwell joined in a deed conveying said lot 1 to the defendant, N. W.

Dickson, he at the same time, executing a writing acknowledging that he had paid Marietta Maxwell no consideration for her interest in said lot, and reciting as follows: "That this transaction is for the purpose of facilitating the sale of the property, and she will control the same as heretofore. I agree to deed the same at any time, when offered a price and terms to suit her; or deed it back to her if not sold within ninety days from this date." On September 22, 1896, J. L. Smith, as special administrator of the estate of Mary Brodie, deceased, commenced an action against Baldwin & Maxwell, F. M. Baldwin, J. W. Maxwell, Mary Baldwin, Marietta Maxwell, H. J. Liggett, and N. W. Dickson, the original notice of which was duly served on each of said defendants. In his petition he asked judgment against F. M. Baldwin and J. W. Maxwell for $2,200 on their six promissory notes dated September, 9, 1891, executed to plaintiff, administrator. He alleged that of said real estate lot 1 passed to Baldwin & Maxwell; that said conveyances to Mrs. Baldwin and to Mrs. Maxwell were made without consideration, and to hinder and delay creditors; and that the conveyance by them to Dickson was in trust, and that Baldwin & Maxwell, Mary Baldwin, and Marietta Maxwell owned said lot 1; and writ of attachment was asked and issued against the property of F. M. Baldwin and J. W. Maxwell, and was levied on said lot 1. In an amendment to his petition said administrator alleged that said lot 1 passed by the deed of general assignment to King, and by the deed from King to Liggett; that the debt due to him was prior to conveyance to Liggett; that Liggett paid no consideration for the conveyance; that he holds the lot as the property of Baldwin & Maxwell, and for the purpose of keeping it beyond the reach of their creditors. He also alleges that the other conveyances mentioned above were without consideration, and to hinder and delay creditors, and asked that the land be held subject to his claim, and for

special execution against said lot. The defendants Baldwin & Maxwell, F. M. Baldwin, Mary Baldwin, and N. W. Dickson answered, admitting said conveyance, and alleging that the conveyance by Mary Baldwin and her husband to Dickson was as security for $500. They denied that Marietta Maxwell and J. W. Maxwell have any title in said property, and alleged that Mary Baldwin is the absolute owner thereof, subject only to the claim of Dickson for said $500 by virtue of the sale and deed to her by H. J. Liggett. They asked decree dismissing plaintiff's petition, and decreeing that Marietta and J. W. Maxwell have no interest in said property. Said defendants also answered plaintiff's amendment to his petition, denying every allegation not admitted. They admit the execution of the general assignment as alleged, the conveyance from King to Liggett, and that all the property passed thereunder. The defendants J. W. Maxwell, Marietta Maxwell, and Baldwin & Maxwell, by J. W. Maxwell, answered, claiming that said lot 1 is the property of Baldwin & Maxwell; that H. J. Liggett had no authority to sell or convey the same to Mary Baldwin, because the same was to be conveyed to the firm after the firm debts had been paid. This answer is signed "J. W. Maxwell, Baldwin & Maxwell, Marietta Maxwell, by J. W. Maxwell, Defendants." On the twenty-seventh day of January, 1897, the court found in favor of the plaintiff, Smith, administrator, against Baldwin & Maxwell, F. M. Baldwin, and J. W. Maxwell, for the balance due on the notes sued upon. The court further found that said lot 1 passed under the will of Mrs. Brodie to Baldwin & Maxwell; that it passed by the general assignment to King, and from King to Liggett, and from Liggett to Mary Baldwin; that the transfer to Dickson by Mary Baldwin was as security for the $500; and that the several conveyances through which the property passed to Mary Baldwin were not in fraud of, nor for the purpose of hindering and delaying the creditors of Baldwin & Max-

well. It was ordered that the plaintiff's petition, so far as
it claims a lien against lot 1, and the attachment
thereon, be discharged, and that Mary Baldwin be
quieted in her title, subject to said lien of $500. A
decree was prepared by counsel for defendants and sub-
mitted to the judge, who, after making some corrections,
signed and approved the same, and it was placed with the
files in the case, but through oversight was not entered upon
the records, as required by the Code. At the August term,
1897, the plaintiff, Smith, presented his petition asking that
said decree be expunged from the record, and set aside, for
various reasons assigned in the petition. Notice of this ap-
plication was duly served on all the defendants, and they ap-
peared and answered jointly, joining certain issues, and the
court, after a most thorough and careful review of said case,
dismissed the petition to set aside said decree. After the
rendition of said judgment and decree, N. W. Dickson
agreed with Mary Baldwin to sell said lot 1 for her as
her agent, for a commission of $50, and thereafter sold the
same for $1,800, one-half of which, less his commission, he
has paid to Mrs. Baldwin, and holds the other half subject
to the judgment and order of the court.

II.   It is conceded that the amount in the hands of the
defendant, Dickson, is $875, and the contention is whether
the plaintiff, as assignee of Mrs. Maxwell, or the intervenor,
Mary Baldwin, is entitled to this amount. Counsel for ap-
pellant say, if the title to said lot 1 was in Mary Baldwin
alone at the date of the sale thereof by King, judgment must
be for the intervenor, but, if the title was in both Mrs. Bald-
win and Mrs. Maxwell, judgment should be for the plaintiff;
and then they proceed to discuss the question of
title. The first question to be determined is whether
this dispute as to title was adjudicated in the case
of Smith administrator, against Baldwin & Maxwell and oth-
ers so as to bind Mrs. Maxwell. Let it be conceded that Mrs.
Maxwell appeared in that action and to the cross petition

of Mrs. Baldwin, yet the question must be answered for the reason that no judgment or decree was entered of record in that case. In *Callanan v. Volruba,* 104 Iowa, 672, we said as follows: "But, until the record is prepared, no evidence exists on the rendi· tion of the judgment. These records are under the control of the court (section 248 of the Code), and through them it speaks the final adjudication defined by the statute as a judgment. Until so rendered, there is no judgment. The Code contains no provisions relating to judgment forms signed by the judge, and these amount to no more than directions for judgments. Until recorded, they were not such, but merely evidence that the court had ordered judgments and approved their form."

III. We now inquire whether Mrs. Maxwell had any interest in said lot 1 at the time defendant, Dickson, sold it for the $1,800. We all agree that the interest of Baldwin & Maxwell, derived under he will, passed to their assignee by their general assignment for the benefit of creditors, but the majority hold that no title to lot 1 passed by the conveyances from King, assignee, to H. J. Liggett, trustee, nor from Liggett, trustee, to Mary Baldwin, for the reason that said lot 1 is not described in said conveyances. They hold that those conveyances only passed title to the real estate specifically described therein, and that what follows the specific description does not convey anything, but merely declares an intention by such description to convey the unsold real estate in Story county that passed under the general assignment; following the rule announced in 1 Jones, Real Property, section 325, and *Thayer v. Finton,* 108 N. Y. App. 394 (15 N. E. Rep. 615). The writer does not concur in this conclusion. I think that the language of these deeds to and from Liggett, trustee, shows plainly a purpose to then and thereby convey the unsold real estate in Story county, and not an intention to convey in the future. In *Land Co. v. Randell,* 82 Iowa, 89, the

deed, after specifically describing a number of lots, contin-
ued as follows: "Also together with .all other lands that
may not have been heretofore described belonging to said
South Park Company." It was held that this passed title
to all the property owned by the plaintiff's grantor at the
time of said conveyances. It seems to me that the intention
to convey by these deeds the unsold property in Story
county is quite as apparent as in the *Land Company's Case.*
It follows from the conclusion of the majority that no title
to said lot 1 passed by the deeds to and from Liggett, trustee.
This being true, the title remained in King, assignee, until
the settlement of the affairs of Baldwin & Maxwell under the
general assignment, and, upon that being accomplished, the
title reverted to Baldwin & Maxwell, and their interest
passed, by the deeds executed by them respectively,
to their wives. It follows, therefore, that Mrs. Baldwin
and Mrs. Maxwell are equally entitled to share in the $1,800
for which the lot was sold, and that the plaintiff, as assignee
of Mrs. Maxwell, is entitled to recover from the defendant,
Dickson, the balance of the purchase money remaining in his
hands.—AFFIRMED.