CHICAGO GREAT WESTERN RAILROAD COMPANY, Appellee, v. T. F. McCAFFERY, Sheriff, et al., Appellants.

**JUDGMENT:  Lien—Attaches to Interest of Judgment Debtor Only.**
1  A judgment does not become a lien upon real estate of which the judgment defendant has been deprived of all interest prior to the entry of judgment in the district court.  So held where the judgment defendant, a railway company, was, through receivership proceedings, deprived of all title to certain real estate, and the same taken over by a reorganized company, prior to the filing in the district court of a judgment against the insolvent and defunct company.

**DEEDS:  Form and Contents—Failure to Specifically Describe Property—General Clause—Effect.**
2  Uncertainty in description of real property such as to nullify a deed does not necessarily result from employing a *general* conveyance clause in lieu of a specific description by platted lot and block numbers.  So held where, after more specific descriptions, appeared ''and all other property owned by'' (naming grantee), and ''all other property (of grantee) of every kind and nature and wherever situated  .  .  .  whether or not herein specifically described.''

**RECEIVERS:  Allowance and Payment of Claims—Failure to File as Per Order of Court—Effect.**
3  Purchasers, at receivership sale, of the property of an insolvent, are under no obligation to pay claims held against the insolvent, but not filed in the receivership proceedings as required by the orders of court.  So held where a judgment holder sought to enforce his judgment after sale and deed in receivership proceeding.

**WITNESSES:  Privileged Communications—Duty of Attorney to Claim.**
4  An attorney should claim the privilege to keep inviolate the confidential communications of his client, in the absence of any showing that the client waives the benefit of such privilege.

So held where an attorney was asked to produce the correspondence of his client.

**TRIAL:** **Reception of Evidence—Equity Causes—Privileged Communications.** The mere fact that a trial is in equity is no justification for the reception of manifestly inadmissible evidence. So held where the court, in an equity cause, refused to receive confidential communications to an attorney.

*Appeal from Pottawattamie District Court.*—E. B. WOOD-RUFF, Judge.

### SATURDAY, JANUARY 13, 1917.

SUIT to enjoin the sale of a lot on execution resulted in decree as prayed. The defendants appeal.—*Affirmed.*

*Kimball & Peterson,* for appellants.

*Carr, Carr & Evans,* and *Saunders & Stuart,* for appellee.

LADD, J.—I. Judgment in the superior court of Council Bluffs was first entered against the Chicago Great Western Railway Company in favor of McManus, July 18, 1906. It was reversed (*McManus v. Chicago G. W. R. Co.,* 138 Iowa 150), and another judg-

1. JUDGMENT: lien: attaches to interest of judgment debtor only.

ment entered. A transcript thereof was filed with the clerk of the district court, November 29, 1910, and the judgment was affirmed on condition, June 10, 1912. *McManus v. Chicago G. W. R. Co.,* 156 Iowa 359. The condition, that of a remittitur, was complied with. An execution had been issued, and, on December 20, 1910, levied on Lot 4 in Block 7 of Riddle's Subdivision in Council Bluffs. The object of this suit is to enjoin the sale of the lot, on the ground that the judgment never attached as a lien thereon, the property at the time of the levy belonging, as is alleged, to the plaintiff. It appears that the Chicago Great Western Railway Company, which may be referred to hereafter as the railway company, acquired the lot

February 17, 1905; and, unless divested of title prior to the filing of the transcript of the judgment of the superior court with the clerk of the district court, November 29, 1910, said judgment became a lien thereon.   The plaintiff claims to have acquired title thereto under a deed executed September 1, 1909, by a special master in chancery, in pursuance of the orders of the United States Circuit Court of the District of Minnesota.   Receivers were appointed by that court on January 9, 1907, "of all the franchises and property, of every name and nature, whether real, personal or mixed, whether . at law or in equity, whether in action or in possession, and wherever situated, of the defendant Chicago Great Western Railway Company."   They were authorized "to take immediate possession of said property  .  .  .   and also to go in and conduct the prosecution and defense of any suits now pending for or against said Chicago Great Western Railway Company, which affect or may affect the property of which they are hereby appointed receivers."   The different lines of the company's railway are described in the decree, and it is stated therein that:

"It owns also all the rights of way, tracks, bridges, structures, viaducts, station houses, engine houses, freight houses, machine shops, and property which are appurtenant to said several lines of railway."   Also cars and equipment, giving numbers, and that it, "in connection with the foregoing property and as part of its railway system, owns also divers and sundry leases and leasehold estates, contracts for running rights, leases of and contracts for terminals, depot grounds, trackage rights, crossings, interlocking plants, freight houses and various other facilities used in connection with said railway or related to the operation thereof.   It owns also divers and sundry stocks, bonds, securities, notes, accounts, money, supplies and other property appurtenant to said lines of railway or related to the operation thereof."

The decree then describes the lines owned by the Mason City & Fort Dodge Railroad Company, together with ter-

minals, yards, equipment and other property appertaining to said lines of railway, and recites that said railway company "was in possession and was operating said railways and property of said Mason City & Fort Dodge Railroad Company under said 'leases and agreements; and, since the appointment of the receivers herein, the said railways have been operated by such receivers."

On April 7, 1908, an interlocutory decree was entered, adjudging the material allegations of the complaint true; that the railway company was and is insolvent; that all of its property, "whether at law or in equity, whether in possession and wherever situated, be sequestrated and set apart to pay the debts and just obligations of the defendant," and the receivers were directed and empowered to "hold, operate and apply all said property for that purpose." The decree also required "the holder or holders of any claim, claims or demands" of said railway company, and "all persons who, as creditors of said company or otherwise, claim any interest in or lien upon any of the funds or property, to file with the special master, on or before November 1, 1908, verified statements of their respective claims," and that those failing so to do "be debarred from sharing in the benefit of the distribution of the moneys and proceeds of the property of said railway company." The decree also declared a sale to be necessary; that the properties and assets constitute one railway system; and that "all said property and assets of every kind and character" ought to be sold as an entirety; and ordered that:

"The property of the defendant Great Western Company of every kind and character and wherever situated, whether or not in the possession or under the control of said receivers, including all its railways, franchises, equipment, structures, supplies, stocks, bonds, claims, bills receivable, rights of action, leases, leasehold estates, contracts and property of every description—whether or not herein specifically described—and also all equipment, supplies, notes, bills, ac-

counts receivable, claims, demands, rights of action and property of every kind and nature, the title or the possession of which at the time possession shall be given under the provisions hereof, shall be in the said receivers—be sold hereunder by the special master of this court hereinafter appointed.''

It was further ordered that, in addition to the amount bid, the purchaser should pay certain costs and charges, all debts presented to the special master and allowed in pursuance of the order hereinbefore mentioned, and ''all debts, obligations and liabilities of the Great Western Company which, within six months after the publication, as herein provided, of the notice for the presentation of such claims, shall have been duly presented to the master, and which shall be duly allowed for payment by said special master without objection, or by the final order, judgment or decree of this court, and which, if they had accrued and been filed prior to November 1, 1908, would have been entitled to payment out of the assets of the Great Western Company now in the hands of the receivers.'' Then followed provision for publishing notice, and directions that, in event the purchasers failed or refused to pay said debts, obligations and liabilities, ''the person holding the claim therefor, upon 15 days' notice to the purchasers or their solicitors, or such other notice as the court may direct, may present to this court a petition to have any such claim enforced against the property aforesaid; the purchasers shall have the right to appear and oppose such petition; and the purchasers and any party to such proceeding shall have the right to appeal from any judgment, decree or order made thereon. Jurisdiction of this cause and of said property is retained by this court for the purpose of enforcing the provisions of this decree.''

A special master was appointed, and receivers ordered to turn over to the purchaser, upon confirmation of the sale, the possession of all property in their custody; and that thereafter the purchasers possess and enjoy the premises and prop-

erty "as fully and completely as" said railway "held and enjoyed the same at the time of the appointment of the receivers;" and that said railway join the special master "in the execution of the deed or deeds to be made by him, and thereby shall release to the purchasers all of its rights, title and interest in all the property conveyed by the special master to the purchasers." The sale was made, and, on July 13, 1909, was confirmed, and the form of deed approved. The deed was executed, as required, September 1, 1909, conveying to plaintiff, the said Chicago Great Western Railroad Company, "all the railroad property and franchises" ordered to be sold, describing the several lines, "including all the rights of way, tracks, bridges, structures, viaducts, station houses, engine houses, freight houses, machine shops and other shops and property which are appurtenant to said several lines of railway, and including various cars, engines and equipment, to wit: 259 engines, 145 cars in the passenger service, including passenger cars, combination cars, emigrant cars, dining cars, parlor cars, sleeping cars, baggage, express and postal cars, 8,204 freight cars, and 325 miscellaneous cars, including officers' and pay cars, gravel cars, derrick cars, caboose cars, and other road cars; and including all lease and leasehold estates, contracts for running rights, leases and contracts for terminals, depot grounds, trackage rights, crossings, interlocking plants, freight houses and other facilities used in connection with said railway or related to the operation thereof." All the capital stock of the Mason City & Fort Dodge Railroad Company, various leases and leasehold interests; "and all other property owned by said Chicago Great Western Railway Company, and all property the title or the possession of which at the time possession shall be given pursuant to the said sale shall be in the receivers of said company heretofore appointed in said cause, of every kind and nature and wherever situated, including all railways, franchises, equipment, structures, supplies, stocks, bonds, claims, bills receivable, rights of action, leases, leasehold es-

tates, contracts and property of every description—whether or not herein specifically described." The conveyance was subject to the requirements of the purchasers under the decree of court.

The several decrees plainly indicate the intention to sequestrate to the payment of the railway company's debts, obligations, and liabilities, all the property it owned; and the sale was of all such property. The con-

2. DEEDS: form and contents: failure to specifically describe property; general clause: effect.

veyance executed by the said railway company, as well as the special master, after more specific descriptions, included "all other property owned by said Chicago Great Western Railway Company, and all property the title or the possession of which at the time possession will be given pursuant to the said sale shall be in the receivers of said company heretofore appointed in said cause, of every kind and nature and wherever situated, including all railways . . . and property of every description, whether or not herein specifically described." There was no uncertainty in this description, as is contended by appellants, for it included everything, real and personal, owned by the railway company. *Clifton Heights Land Co. v. Randell,* 82 Iowa 89; *Pettigrew v. Dobbelaar,* 63 Cal. 396; 2 Devlin on Real Estate, Section 1013.

The decisions relied on by appellants are not in point, for in none is it held that a description such as this is not sufficient to pass title as between the parties. In *King v. Dickson,* 114 Iowa 160, a more general, following a particular, description was held to relate to the particular description. The question of notice is not involved, as the judgment did not attach as a lien on the lot after it had been conveyed to the railroad company, regardless of whether the deed was recorded or, if recorded, would impart notice. *Watson v. Bowman,* 142 Iowa 528; *Moore v. Scruggs,* 131 Iowa 692. The judgment never became a lien on the lot.

II.   Counsel for appellants argue, however, that, even though title to the lot did pass to the railroad company, the liability of the railroad company was fixed by the decree of the court.   There was no proof that the claim had been filed prior to November 1, 1908, and on failure so to do, the court decreed that a claimant might not share in the proceeds of the sale.   Nor was there any showing that the claim was presented to the special master within six months of the publication of notice, or allowed by him in pursuance of the decree ordering sale.   The purchasers were under no obligation to pay any indebtedness of the railway company unless so presented, and the remedy to be pursued, as pointed out therein, does not render the indebtedness, in whatever form, a lien against the purchasers' property.   The judgment was and is against the railway company, and it need hardly be said that, as such, it did not attach as a lien on the property of the railroad company acquired prior to the filing of a transcript thereof with the clerk of the district court.   All held in *Sloan v. Central Iowa R. Co.*, 62 Iowa 728, is that plaintiff, who had been injured in the operation of the railway when in the hands of a receiver, might maintain an action for damages against the company after the court had ordered its return to the company upon condition that it would assume and pay all liabilities incurred while the road was operated by the receiver. The company was merely held to perform obligations assumed.   Here, the railroad company was required to pay claims only which were presented to the special master, and not liabilities generally, as in the above case, and the conveyance was completed prior to the time the judgment by the filing of a transcript could have attached as a lien. The court rightly enjoined the enforcement of the judgment against the lot.

*3. RECEIVERS: allowance and payment of claims: failure to file as per order of court: effect.*

III.   Saunders, of the firm of Saunders & Stuart, was called as a witness; and on his examination it developed that

correspondence by the firm with the railroad company, and perhaps the receivers, concerning the case of *McManus v. Chicago G. W. R. Co.*, then pending, was on file at the firm's office. Counsel for defendants demanded the production of such correspondence, whereupon the witness claimed the privilege of not being required to disclose confidential communications properly intrusted to him in his professional capacity, as permitted under Section 4608 of the Code, 1897.   He was not required to produce the correspondence, and counsel for appellants except to the ruling on two grounds: (a) That the client, rather than the attorney, must claim the privilege; and (b) the court may not rule on objections to the admissibility of evidence on hearings in equity.

4. WITNESSES: privileged communications: duty of attorney to claim.

The statute prohibits an attorney from disclosing professional communications from his client, and is substantially a re-enactment of the common law.   The rule has several exceptions not here involved, and is for the benefit of the client. The latter may waive such benefit; but, unless he does so, the attorney must claim the privilege and keep inviolate the confidential communications of his client.   Weeks on Attorneys, Section 182.

Counsel for appellant insist, however, that, as the cause was being heard in equity, the court should have reserved the ruling and received the evidence.   This would have defeated the very object of the law, by exacting the violation of the command by the statute, and breaking the professional confidence reposed in the attorney.   In the hearing of causes in equity, the function of the court is not merely that of maintaining order.   It may and should exclude all evidence tendered concerning the inadmissibility of which there exists no reasonable doubt.   If, however, the admissibility of any item of evidence is doubtful, objection thereto should be overruled, or the ruling thereon reserved, so that the evidence is received subject to objection, to the end that it be made a

5. TRIAL: reception of evidence: equity causes: privileged communications.

part of the record, so that the cause may be heard *de novo.*
That the cause may be so heard does not warrant the trial
court in permitting or the parties in injecting everything into
the record.   Only when evidence is admissible, or its admissibility is fairly debatable, should it be tendered by counsel
or received by the court.

The ruling has our approval, and the decree is—*Affirmed.*

GAYNOR, C. J., PRESTON and SALINGER, JJ., concur.