State of Iowa, Appellee, v. Dave Masters, Appellant.

**WITNESSES: Confidential Relations—Record Required.** An objection
1 that confidential communications were received from a physician necessitates a record affirmatively showing (1) that the witness in question *was* a practicing physician; (2) that a confidential relation existed between the witness and the objector; and (3) that the matters testified to were confidential communications.

**CRIMINAL LAW: Argument—Indirect Reference to Failure to Testify.**
2 Principle reaffirmed that a statement by the county attorney in argument that the testimony of the State stands undenied is not necessarily to be construed as a reference to the failure of the accused to testify.

*Appeal from Mahaska District Court.*—Charles A. Dewey, Judge.

May 6, 1924.

Indictment for larceny. From a judgment upon a verdict of guilty, the defendant appeals.—*Affirmed*.

*Bates & Dashiell, Wilson & Shaw,* and *C. C. Putnam,* for appellant.

*Ben Gibson,* Attorney-general, *Maxwell A. O'Brien,* Assistant Attorney-general, *Roscoe Woodard,* County Attorney, and *McCoy & McCoy,* for appellee.

VERMILION, J.—The evidence on the part of the State tended to establish the following facts:

On the night of May 8, 1922, a Cadillac sedan belonging to H. B. Patton was stolen from his garage in Oskaloosa. On the morning of that day, the defendant and two other men were seen in Pella in a Cadillac roadster with the top down and bearing license number 1-10907. They were there some time. The defendant was seen walking, and was not limping. About 4 o'clock, they were seen driving south on the road to Oskaloosa. Between 11 and 12 o'clock on that night, two men in a Cadillac roadster, with the top down, and towing the Patton car, in which was another man, were seen on a street in Oskaloosa leading to the road to Pella. The cars were going 35 or 40 miles per hour, and the lights on the cars were out. One of the witnesses called to them to turn on the lights; but they did not do so, and speeded up. One witness said that the man driving the roadster resembled the defendant; another said he was not certain, but in his best judgment it was the defendant. Patton was called by telephone, discovered that his car was gone, and he and some officers started toward Pella in search of it. Some five miles from Oskaloosa, they turned back over another road, and saw a roadster standing, with two or three men in it. These men, as the party approached, turned their lights out and started away. The next morning, at the point where the roadster had stopped, some wires and cigarettes were found lying around, and foot tracks were seen, and not far from there the Patton car was found, stripped of two spare tires and other articles, and with the wiring burned off. The car had been locked the night before, and was still in that condition; but the lock had been hammered. About 1 o'clock on the morning of May 9th, a large roadster, with the top down, drove through Pella, going north. There were three men in it, and two or three spare tires on the back. As the car approached the wit-

nesses, the lights were turned off, and it slowed down, and speeded up after passing. At Prairie City, between Pella and Des Moines, the city marshal and a party of men, having been advised of the theft of the car, were watching where the road from Pella entered the town. About 2 o'clock of the same morning, a large roadster, with the top down, approached, with two or three men in it. One of the witnesses testified that he knew the defendant, and that he was one of the men in the car. They were ordered to halt, but instead of doing so, increased their speed, and several shots were fired at the car. About 11 o'clock in the morning of May 9th or 10th, an individual called in the record a doctor, at Madrid, 28 miles north and west of Des Moines, received a call to go to a gravel pit about two and a half miles west of Madrid. There he found the defendant, in a small house or shack, lying on a cot, and two other men with him. He saw a Cadillac roadster at the shack, with the top down, and a hole through the left-hand door, on the side where the steering wheel was, and blood on the floor of the car, and in the car was a shoe, with a hole in the upper part. He returned to the shack the next day, and no one was there. About May 15th, two automobile tires were found under a bridge some three miles east of Prairie City, and were identified by Patton as those on his car the night it was stolen. The Patton car was of the value of about $4,500. At the time of the trial, the defendant walked with a limp. License number 1-10907 was issued in Polk County, to Dave Masters, for a Cadillac roadster.

Numerous errors are assigned. In many instances the assignment is wholly insufficient to require consideration. But three of the errors assigned are argued, and these are all that we are required to consider.

The first two relate to the admission of the testimony of Dr. Shaw and Dr. Walston. The argument is predicated on the statement that these witnesses were physicians, and engaged in treating the defendant, and that they were incompetent, under Section 4608 of the Code, to testify to any confidential communications intrusted to them in their professional capacity, and necessary and proper to enable them to discharge their functions. In the first place, it is a mere matter of inference that these witnesses were

1. WITNESSES: confidential relations: record required.

physicians. There is no evidence to that effect. They are spoken of as doctors in the record, and addressed as such in their examination, and the former was requested by one Slick to call at the gravel pit. The latter testified to seeing the defendant in Des Moines on May 11th at his mother's home. The statements of the witness that he saw him every day or two were stricken from the record, on motion of the defendant. In the next place, if it be assumed that they were physicians, there is not a word of testimony that either of these witnesses was called or employed to treat the defendant professionally, or ever examined or treated him. The burden of showing the existence of a confidential relation is upon the party objecting. *Stoddard v. Kendall*, 140 Iowa 688. And, finally, if it should be conceded that they did sustain a confidential relation with the defendant, neither of them testified to anything in the remotest degree in the nature of confidential communications, or to anything learned in a professional capacity. The statute does not prohibit a physician from testifying in any and all cases in which his patient may be a party. He is only prohibited from testifying to any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to perform his duty, and to facts which are learned by him in the discharge of his duties, from his observation and examination of the patient, where they are of a confidential nature, and necessary and proper to enable him to discharge his professional duty. *Prader v. National Masonic Acc. Assn.*, 95 Iowa 149; *Nelson v. Nederland Life Ins. Co.*, 110 Iowa 600; *Blossi v. Chicago & N. W. R. Co.*, 144 Iowa 697. The testimony of these witnesses has been set out above. It did not come within the prohibition of the statute.

The complaint made of the closing argument of counsel for the State is not well founded. Much of the matter objected to appears to have been in answer to the arguments on behalf of the defendant. The statement that the testimony on behalf of the State was not denied was not prejudicial. The defendant introduced no evidence whatever. Such a statement is not necessarily to be construed as a reference to the fact that the defendant did not testify on his own behalf. *State v. Snider,*

2. CRIMINAL LAW: argument: indirect reference to failure to testify.

119 Iowa 15; *State v. Riley,* 177 Iowa 313; *State v. Krampe,* 161 Iowa 48; *State v. Boyd,* 196 Iowa 226.

The remarks of counsel did not offend against the rule laid down in *State v. Robinson,* 170 Iowa 267, cited by counsel. What was said in reference to why the case was tried, and to the duty of the jurors, was in connection with the evidence in the case and the circumstances of the crime.

While not required to do so, we have examined such of the errors assigned as in any way point out the matters complained of. The objections to two instructions are hypercritical and without merit. Error is assigned on the admission of certain exhibits. They are not set out in the abstract, but a reference to the additional abstract filed by the State discloses that they relate to the registration in Polk County of a Cadillac roadster, its transfer to the defendant before the Patton car was stolen, its registration number at that time, and its subsequent transfer to another. No error is shown here.

The verdict has ample support in the evidence, and the judgment is—*Affirmed.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.