VIRGINIA SHEPHERD and BYRLE E. SHEPHERD, wife and husband, appellees, v. GEORGE C. McGINNIS, M.D., and SISTERS OF THIRD ORDER OF ST. FRANCIS, a corporation, appellants.

No. 51507.

(Reported in 131 N.W.2d 475)

36

November 17, 1964.

Johnson & Phelan, of Fort Madison, for appellants.

McManus & McManus, of Keokuk, for appellees.

GARFIELD, C. J.—This is a law action by Virginia Shepherd, whom we call plaintiff, and her husband, Byrle, in two counts against Dr. George C. McGinnis and The Sisters of the Third Order of St. Francis, a corporation, which operates a hospital in Fort Madison, for malpractice in using alleged contaminated sutures in performing surgery upon Virginia. Byrle's claim is for loss of consortium. From judgment for $20,000 on a jury verdict for plaintiff, defendants appeal. The husband cross-appeals from judgment on jury verdict for defendants, on his claim.

Early in 1960 plaintiff, then about 43, consulted defendant doctor and his partner, Dr. Harold L. Schrier, for pain in her lower right side. The trouble was diagnosed as an ovarian cyst which Doctor McGinnis removed in defendant hospital March 12, 1960. The cyst was about the size of a baseball. Infection in the operative wound followed, which plaintiff claims was caused by the doctor's use of contaminated sutures furnished by the hospital. Plaintiff alleges both defendants knew or should have known of this contamination. Proof of the alleged negligence of each defendant consists mainly of claimed admissions by Doctor McGinnis and his partner in the former's presence.

Defendants assign 13 errors. Some are duplications. In oral argument defendants conceded three of the alleged errors were not in themselves reversible but suggested their cumulative effect furnished added support for a reversal. We will discuss most of the assigned errors but not in the order followed in the briefs. It seems best to consider first whether a jury question was presented as to the liability of each defendant. This calls for some further reference to the evidence. Of course it must be viewed in the light most favorable to plaintiff.

I. Plaintiff was admitted to the hospital three days before the operation on March 12. She was discharged March 21 but

reentered March 24 and stayed until the 28th. Before and after the 21st the incision kept coming open and was infected. After the 28th Doctor McGinnis dressed the wound frequently in his office, plaintiff says on the average of everyday until mid-April. Plaintiff testifies she returned to the hospital for four days at that time but we find no evidence of such a visit in the hospital record. On May 26, 1960, plaintiff went to Doctor McGinnis with a bleeding hemorrhoid. There is no showing the hemorrhoid was caused by infection from the operation of March 12.

On September 6, 1960, plaintiff reentered defendant hospital for five days. Doctor McGinnis diagnosed her trouble then as caused by a cerebral hemorrhage. She was readmitted to the hospital for two weeks on September 23 with symptoms of such a hemorrhage—severe headaches and numbness of the left hand and arm. There is no evidence the hemorrhage was caused by the operation. Plaintiff insists there was some drainage from the operative wound until she was operated on by Dr. Robert D. Rowley in a Burlington hospital on February 14, 1961, for removal of a diseased gallbladder. Plaintiff admits, however, the condition cleared up some in October 1960. Plaintiff's husband testifies he was unable to have marital relations with her for eight months, commencing about two weeks before the March 12 operation, "maybe longer"; her bad months were June and July.

Doctor McGinnis ceased treating plaintiff in October 1960 after a letter to him from plaintiff's attorneys threatened him with suit and the Shepherds refused to release him from liability. Plaintiff then consulted Doctor Rowley in Burlington. As a witness for plaintiff Doctor Rowley says she told him her operative wound continued to drain until August. He also testifies he felt she was approaching "menopausal syndrome-like and quite a bit of her symptoms were on that basis." Doctor Rowley says too that plaintiff's gallbladder disease could have no connection with the scar from the operation on March 12 or any rupture of that scar.

As previously indicated, plaintiff relies largely on evidence of admissions of defendant doctor to support her claim that the sutures used on March 12 were contaminated, both defendants knew or should have known this condition, and the contaminated

sutures were the proximate cause of plaintiff's injury and damage. Plaintiff testifies that before she left the hospital on March 21 Doctor McGinnis stated she had an infection and said "the d--n sutures again"; in about April 1960 Doctor Schrier said in the presence of herself, Doctor McGinnis, and their nurse, Miss Parre, "Those d--n sutures have caused us so much pain and suffering. Someone ought to sue the s.o.b.s", referring to the manufacturer of the sutures; Doctor McGinnis did not deny this; he said it was the way the sutures were packaged and kept which caused the trouble; several times between March 12 and October 17, 1960, Doctor McGinnis told her the sutures used in her operation caused the infection which followed and that was the only excuse he gave for the infection.

Pauline Parre, a nurse in the office of Doctors McGinnis and Schrier, underwent surgery in defendant hospital December 4, 1959, by a Doctor DeLashmutt, with Doctor Schrier's assistance, for removal of an infected stump of her appendix (left from a previous appendectomy) and a piece of infected bowel. (Doctor McGinnis was out of town at the time of this operation.) The same brand of sutures was used in operating upon Miss Parre. Defendant hospital used no other brand during this period. After Miss Parre's operation the incision came open, the sutures came out and the wound drained.

Miss Parre testified Doctor McGinnis told her in April 1960 the catgut caused the trouble just referred to, that he thought it was old, it was rotten catgut, a bad batch; he treated her for this condition until July 1960; also in about April Doctors McGinnis and Schrier told plaintiff the cause of her condition was bad catgut and on many occasions that she should sue the manufacturer.

As a witness for defendants Doctor McGinnis admits he may have referred to the sutures used on plaintiff and Miss Parre as "those d--n sutures." He denies, however, he told either of them they caused her postoperative infection and says plaintiff's infection came from the fluid in the cyst being removed and from the susceptibility to infection of the scar tissue in plaintiff's abdominal wall from previous surgical operations. In a deposition taken before trial Doctor McGinnis said he did not know

what caused plaintiff's infection. Other surgeons confirmed Doctor McGinnis' testimony at the trial as to the cause of the infection.

Before March 1960 plaintiff had been in and out of a hospital and undergone surgical operations several times, including an appendectomy in 1929, an oophorectomy in 1943, hemorroidectomy in 1949, hysterectomy in 1950, and removal of abdominal adhesions in 1957. She was also admitted to defendant hospital several other times before March 1960 with partial bowel obstruction. She had had spinal meningitis, scarlet fever, pneumonia, and peritonitis following childbirth.

There is medical evidence for defendants that these previous operations caused latent bacterial infection which would probably be activated by other surgery in the area and produced scar tissue which is more susceptible to infection.

Plaintiff offered no expert evidence such as appears in most cases of this kind. A surgeon called by plaintiff testifies on cross-examination, in substance, that if contaminated sutures were placed in a wound it was quite obvious the wound would be contaminated. Another such surgeon says, in effect, that contaminated sutures could cause such infection.

II. We think there is sufficient evidence to warrant submission of the case to the jury as against defendant doctor. The jury could find from his admissions and those of his partner, in his presence and with his apparent approval, that the sutures were contaminated, defendant doctor knew this, they were the cause of plaintiff's infection and damage resulted therefrom.

It is elementary that admissions and declarations of a party to the action, against his interest, are competent evidence against him. Tuthill v. Alden, 239 Iowa 181, 186, 187, 30 N.W.2d 726, 728, and citations; Book v. Datema, 256 Iowa 1330, 131 N.W.2d 470, and citations; 31A C. J. S., Evidence, section 272a, page 697.

White v. Walstrom, 254 Iowa 646, 650, 118 N.W.2d 578, 581, says a plaintiff may "always prove his case by statements of defendant made out of court * * *." And McGulpin v. Bessmer, 241 Iowa 1119, 1126, 43 N.W.2d 121, 125, a malpractice case,

states: "Admissions of a physician, when not mere statements of regret or sympathy, are sufficient in themselves to take a case of this kind to the jury" (citation). The case is cited with apparent approval in Stickleman v. Synhorst, 243 Iowa 872, 877, 52 N.W.2d 504, 507.

Insofar as part of defendant doctor's admissions were in the form of opinions, they were on a subject on which he was competent to speak as an expert witness and were not inadmissible as opinions. 31A C. J. S., Evidence, section 272b, pages 700, 701. We need not decide whether admissions that are opinions of a party are generally admissible.

III. We think too there is sufficient evidence defendant hospital knew, or should have known, the sutures it furnished Doctor McGinnis for the March 12 operation on plaintiff were contaminated.

As defendants suggest, so far as shown Doctors McGinnis and Schrier were not officers or employees of the hospital for whose negligence it would be liable under the doctrine of respondeat superior. Plaintiff selected them. Their status was more nearly that of independent contractors than agents or employees of the hospital. Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 389, 390, 101 N.W.2d 167, 175, 176, and citations; 41 C. J. S., Hospitals, section 8c(2), page 346.

The admissions and declarations of Doctors McGinnis and Schrier were not admissible against the hospital. As to it, they were hearsay. However, much testimony of this kind was received without objection. There is also much evidence that Sister Anicetta, in charge of the operating room, was present when Miss Parre's operative wound was being dressed on 19 consecutive days commencing December 16, 1959, although she did not always take care of her; Miss Parre conversed with the Sister concerning the sutures daily; the Sister told her "she had no knowledge of any trouble before." There is also evidence that in April 1960 a meeting was held, attended by the hospital's chief of surgery, the Sister then in charge of the surgical room, Doctors McGinnis and Schrier, and a representative of either the manufacturer of the sutures or an insurance company, to consider complaints received about the sutures apparently over

a considerable period; the representative of the manufacturer or insurer "was concerned about his own company because he felt there might be a lawsuit against them and he apparently had some reason"; it was decided there was nothing wrong with the suture material but they were removed from the hospital to avoid further criticism. This was all received without objection.

There is other evidence too that the hospital knew or should have known the defective condition of the sutures.

 IV. We consider next defendants' contention the verdict for $20,000 is excessive, so large that it shocks the conscience and entitles them to a new trial. We think there is merit in the contention.

We are fully aware the jury has a good deal of discretion in awarding damages in cases of this kind. We are, and should be, reluctant to interfere with the exercise of such discretion. Although damages for pain and suffering cannot be computed exactly, the verdict must have support in the evidence. We have said the most important consideration in determining whether a verdict is excessive is whether it has such support and that, if not, a finding it is the result of passion and prejudice, which shocks the conscience, may arise. Mazur v. Grantham, 255 Iowa 1292, 1303, 125 N.W.2d 807, 813, 814. We find this to be the situation here.

There is no evidence plaintiff was permanently injured. She did suffer annoyance, discomfort and pain for some time following the March 12 operation. How much of this was caused by infection from the sutures rests wholly in speculation and conjecture. Much of her disability must be attributed to other causes—weakness that would have followed the operation in any event, bleeding hemorrhoids, cerebral hemorrhage, menopausal syndrome, and diseased gallbladder.

Plaintiff worked as a bookkeeper for a laundry at $60 a week and lost some time from her work—how much was caused by the infected wound we may only speculate. She testifies she returned to work April 23 on a half or third time basis until September 3. (She was hospitalized on September 6 from what defendant doctor diagnosed as a cerebral hemorrhage.) Plaintiff also says she was able to work only about a third of the time

from October 3, 1960, to February 3, 1961. (She was operated on in Burlington for the diseased gallbladder February 14, 1961.)

Plaintiff was also unable to do the heavier housework for some time and her husband helped with it, especially when she returned from the hospital in March and in what the husband refers to as "the bad months" of June and July.

Aside from the loss of wages above referred to, Doctor McGinnis had a bill for $117 for treating plaintiff after the operation of March 12.

It seems the jury must have charged defendants with all the time plaintiff lost from her work and all her discomfort and pain between March 12, 1960, and the time of trial in December 1962. The effect of plaintiff's argument here is that she is entitled to recover on this basis. So far as shown, defendants are not chargeable with much of plaintiff's trouble during this period.

This is not a case where the excessiveness of the verdict may properly be remedied by giving plaintiff the option of remitting the excess or submitting to a new trial.

V. Defendants assign error in the admission of testimony concerning the operation upon Miss Parre on December 4, 1959, and the follow-up operation upon her by Doctor McGinnis on February 6, 1960, and testimony of Miss Parre as to operative wound infection of other patients of Doctor McGinnis. The testimony last referred to was received without objection. It was, "during 1958 and 1959 while in Dr. McGinnis' employ she had occasions to observe other patients with similar problems with respect to this catgut." Obviously no error appears.

The point raised as to the testimony concerning Miss Parre's operations is that it was not shown conditions were substantially similar to those surrounding the operation upon plaintiff. See Crouch v. National Livestock Remedy Co., 205 Iowa 51, 63, 64, 217 N.W. 557, and citations. We think there is evidence of sufficient similarity of conditions to render the evidence concerning Miss Parre's operations admissible on the issue whether defendants knew or should have known the sutures used on plaintiff were defective.

Of course the same sutures were not used in the different

operations. They were, however, made by the same manufacturer and packaged and kept in the same manner. As stated, there is evidence it was the way the sutures were packaged and kept which caused both plaintiff's and Miss Parre's trouble. Similarity of conditions may fairly be inferred from some of the evidence received without objection as to admissions of Doctor McGinnis and his partner in the former's presence, "the d--n sutures *again*", "those d--n sutures have caused *us* [plaintiff and Miss Parre] so much pain and suffering." It may fairly be inferred defendant doctor attributed the infection in both patients to the same cause.

VI. Error is assigned in overruling defendants' objections to plaintiff's cross-examination of defendant doctor. On his direct examination the doctor testified that between December 5, 1959, and May 1, 1960, he performed about 87 major operations in defendant hospital and there was operative wound infection in only a Mrs. Morris and Mrs. Britton in addition to plaintiff and Miss Parre's February 6th operation. Also that the national average of post-operative wound infection in abdominal surgery was three to five percent.

On cross-examination over defendants' objection plaintiff was permitted to ask Doctor McGinnis about postoperative infection in 12 or more other claimed patients of his. Plaintiff made no apparent effort to show when any of these operations were performed, whether they were performed in defendant hospital, whether they were abdominal operations, whether the infection was caused by contaminated sutures—the same brand as used on plaintiff or otherwise, or whether defendant hospital supplied the sutures or knew or should have known they were contaminated. Nor was the cross-examination limited in any of these respects.

It is of course true, as plaintiff asserts, that the scope and extent of cross-examination rests largely in the trial court's discretion and its rulings on such questions will not be disturbed unless an abuse of discretion appears. However, we think it was an abuse of discretion to permit this extended cross-examination on remote matters when no attempt was made to show its relevance to the issues. The jury was apt to draw the unwar-

ranted inference from it that the infection in all these persons came from the same cause as plaintiff's. The cross-examination would also naturally tend to draw the minds of the jury away from the issues and open a wide field of collateral inquiry. We think the direct examination did not "open the door" to such extended cross-examination on remote, collateral matters.

VII. Error is assigned in permitting the witness Miss Parre and compelling Doctor McGinnis to testify to matters said to be privileged by section 622.10, Code, 1962. So far as pertinent, the statute provides that no physician or surgeon, who obtains such information by reason of his employment, shall testify to "any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office * * *. Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred."

It is not claimed Miss Parre's testimony as to her own operation and the results thereof violated the privilege. Clearly this would be a waiver of the privilege by the one in whose favor it was made. Knigge v. Dencker, 246 Iowa 1387, 1396, 72 N.W.2d 494, 499, and citations; 97 C. J. S., Witnesses, section 310c, page 861. See also Cross v. Equitable Life Assur. Soc., 228 Iowa 800, 805, 293 N.W. 464.

It is equally clear Miss Parre's testimony quoted in Division V hereof that she observed "other patients with similar problems", without naming them, would not violate such privilege. Further, as Division V states, this evidence was received without objection and therefore error cannot be assigned in its admission. Hepker v. Schmickle, 209 Iowa 744, 753, 229 N.W. 177, and citations; State v. Koenig, 240 Iowa 592, 595, 36 N.W.2d 765, 766, and citations.

The testimony of Doctor McGinnis to which this assigned error refers was his cross-examination Division VI hereof holds was improper. One ground of defendants' objection to it was the claim of privilege. Since this question may arise upon a retrial, we may say we think this ground of the objection was good except insofar as these defendants waived their right to assert it by the doctor's direct examination. Such examination

made it proper for plaintiff to cross-examine on the postoperative wound infections of patients operated on by him in defendant hospital from December 5, 1959, to May 1, 1960.

We have held several times the privilege extends not only to confidential communications to the physician, necessary and proper to enable him to treat the patient, but also to knowledge and information the physician gained by observation and examination of the patient in the discharge of the physician's duties. Newman v. Blom, 249 Iowa 836, 844, 89 N.W.2d 349, 355, and citations; Bradshaw v. Iowa Methodist Hospital, 253 Iowa 1360, 1362, 115 N.W.2d 816, 817. See also State v. Masters, 197 Iowa 1147, 1150, 198 N.W. 509. Accordingly, a physician cannot testify to the nature of the disease with which the patient is afflicted. Nelson v. Nederland Life Ins. Co., 110 Iowa 600, 605, 81 N.W. 807. It is plain Doctor McGinnis' knowledge of his patients' maladies was gained by his observation and examination of them in the discharge of his duties.

Plaintiff asserts that only the patient may claim the privilege and the physician may not do so. It is true the privilege is for the benefit of the patient, not the physician. If the patient were a party to the action or present at the trial and did not claim the privilege such failure would be a waiver thereof. Hepker v. Schmickle, supra, 209 Iowa 744, 753, 229 N.W. 177, and citations; 58 Am. Jur., Witnesses, section 446. Here, the dozen or more patients of defendant doctor about whom he was cross-examined were not parties and there is no indication or suggestion any of them were present at the trial. Their failure to claim the privilege which they were not in position to assert may not be deemed a waiver thereof.

Since those in whose favor the privilege existed had not waived it, it was the doctor's duty to claim the privilege. Chicago, G. W. R. Co. v. McCaffery, 178 Iowa 1147, 1155, 160 N.W. 818; Schwimmer v. United States, 8 Cir. (Mo.), 232 F.2d 855, 863 (certiorari denied 352 U. S. 833, 77 S. Ct. 48, 1 L. Ed.2d 52); In re Myer's Will, 184 N. Y. 54, 76 N.E. 920, 921, 6 Ann. Cas. 26. See also 97 C. J. S., Witnesses, section 303, pages 845, 846.

The Schwimmer opinion, supra, quotes this with approval

from 58 Am. Jur., Witnesses, section 467, "The seal of the law once fixed upon (such a privileged communication) remains * * * unless removed by the party in whose favor it is there placed." And this seems to be what section 622.10 provides.

VIII. Error is assigned in the refusal to permit Doctor McGinnis to refer to certain records and memoranda while testifying, for the asserted purpose of refreshing his recollection. A long hassle developed during the trial over this matter and some impatience was shown by counsel, the witness and even the trial court.

During his direct examination Doctor McGinnis frequently referred to hospital and office records and memos prepared therefrom, for the asserted purpose of refreshing his recollection mainly as to dates when plaintiff was treated by him or Doctor Schrier or hospitalized for different ailments. Plaintiff's counsel was permitted to cross-examine the doctor at length during the direct examination, for the purpose of showing he had no recollection of many of the matters testified to and no knowledge of the truthfulness of the records and memos, much of which was prepared by others. Some of the questions asked were in regard to visits of plaintiff to Doctor Schrier of which Doctor McGinnis had no knowledge.

Toward the end of this cross-examination defendants' counsel became impatient, perhaps with some justification, and announced that for the purpose of expediting the trial he would withdraw the four principal exhibits to which the witness had referred "subject, however, to all the objections heretofore made to the continued cross-examination." The court regarded this as an end to the matter and suggested that the trial proceed. He announced, however, he had no objection to the witness using anything in the exhibits if it actually refreshed his recollection but said the doctor has indicated he had no personal recollection of many of these items and they do not refresh his memory. We find no reversible error under this assignment.

98 C. J. S., Witnesses, section 358a, states: "A witness should not be allowed to testify to facts of which he is without present or past recollection and which are brought to his mind for the first time by the memoranda of another person. * * *

The court should reject an attempt to refresh the memory of a witness with a book or paper where it appears that the witness never had any personal knowledge of the matter, * * *."

Coad v. Pennsylvania R. Co., 187 Iowa 1025, 1030, 175 N.W. 344, 347, says, "One who has no personal recollection of a matter, except from a record kept by another, may not testify to a transaction purported to be disclosed by such record."

The exhaustive annotation in 125 A. L. R. 19, 145, cites numerous decisions for the statement, "Lack of knowledge of the facts has been held in many instances to preclude use of the memorandum."

See also Williams v. Stroh Plumbing and Electric, Inc., 250 Iowa 599, 604–606, 94 N.W.2d 750, 754, 755, 82 A. L. R.2d 465, 471, 472, and annotation, 473, et seq., supplementing the one in 125 A. L. R. which point out that before a memorandum may be used to refresh the present recollection of a witness it must appear that such recollection is so revived thereby as to enable him to testify to the transaction from personal knowledge.

IX. Defendants complain of the exclusion of portions of exhibits C, D and E, the medical (or hospital) records respectively, of plaintiff in defendant hospital and the Burlington hospital and of Miss Parre in defendant hospital. A comparatively small part of each exhibit was excluded as covering a period too remote in time and lacking in relevancy and materiality. For example, the only excluded portion of exhibit D relates to a time subsequent to plaintiff's confinement as a result of her operation in February 1961. The only excluded portion of exhibit E (Miss Parre's record) relates to confinement as long ago as 1950 and 1951. The record relating to 1959 and 1960 was received.

Defendants argue plaintiff's entire medical records should have been received for the purpose of showing her disposition toward hypochondria and a contributing cause of the infection complained of. We find no error in these rulings. Further, the matters shown by the excluded portions of the exhibits, especially those relating to plaintiff, appear quite clearly from her own testimony and that of her doctors. Defendants therefore suffered no substantial prejudice from the rulings.

X. The court permitted plaintiff to amend her petition by claiming some elements of damage not included in her original petition. The amendment was filed more than two years after the operation of March 12, 1960. Defendants' claim the amendment was barred by the two-year statute of limitations (section 614.1(3) Code, 1962) is without merit. Where, as here, the action is commenced in time, a claim for additional damages arising from the tort may be stated by way of amendment after the two-year period. Benson v. City of Ottumwa, 143 Iowa 349, 352, 121 N.W. 1065, and citations; Iowa Nat. Mut. Ins. Co. v. Chicago, B. & Q. R. Co., 246 Iowa 971, 981, 982, 68 N.W.2d 920, 927, and citations.

XI. One other assigned error does not merit discussion and the remaining one relates to a matter which would not arise upon another trial.

The excessiveness of the verdict and the cross-examination of defendant doctor, as pointed out in Divisions IV, VI and VII, supra, entitle defendants to a new trial.

XII. Plaintiff husband's cross-appeal from the judgment on the verdict against his claim for loss of consortium calls for little discussion. His counsel said in oral argument the cross-appeal is not strenuously urged. Only two pages of the printed brief are devoted to it. No authorities are cited. The error assigned is that the verdict was contrary to and unsupported by the evidence.

Unless the husband was entitled to recover on his claim as a matter of law there is insufficient basis for us to interfere. We have many times pointed out it is not often, in the absence of an admission by his adversary, that a party who has the burden of proof on a tort claim is entitled to recover as a matter of law. The jury was not compelled to find defendants caused plaintiff loss of consortium or that he was damaged thereby.— Reversed and remanded on defendants' appeal; affirmed on the cross-appeal.

All JUSTICES concur except HAYS, J., not sitting, and LARSON, J., who dissents from Division IV relating to the excessiveness of the verdict.