Dixie E. LUND and Don
W. Lund, Appellants,

v.

James D. McENERNEY and Obstetrics
and Gynecology Specialists, P.C.,
Appellees.

No. 91–1557.

Supreme Court of Iowa.

Feb. 17, 1993.

Rehearing Denied March 26, 1993.

Stuart R. Lefstein and John F. Doak of Katz, McAndrews, Balch, Lefstein & Fieweger, P.C., Rock Island, IL, for appellants.

Robert V.P. Waterman, Jr. of Lane & Waterman, Davenport, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO, and SNELL, JJ.

SNELL, Justice.

Appellants, Dixie and Don Lund, appeal an adverse jury verdict in a trial in which the Lunds claimed the appellees, Dr. James McEnerney and Obstetrics and Gynecology Specialists, P.C., negligently injured Dixie Lund's ureter during an abdominal hysterectomy. The Lunds' appeal arises as a result of a letter from the jury that accompanied its sealed verdict. The Lunds argue that the letter and subsequent jury affidavits raise sufficient doubt regarding the jury's agreement to warrant a new trial. Also, the Lunds contend the trial court erred in excluding evidence that Dr. McEnerney had similarly injured other patients. We affirm.

## I. *Background facts and proceedings.*

At trial, the Lunds testified that during an abdominal hysterectomy performed by Dr. McEnerney, Dixie Lund's right ureter was injured by a suture. The injury caused the ureter to constrict and required additional corrective surgery by a urologist. The Lunds also claimed permanent injuries. The defendants admitted that Dixie Lund's ureter had been injured during her surgery, but denied negligence. Dr. McEnerney maintained that he exercised the degree of skill, care, and learning of a gynecological specialist, and was not responsible for Lunds' injuries.

During trial, Dr. McEnerney testified on direct examination that he had performed "around 700 gynecological procedures that involved work in or around the ureter and tube from the bladder," between 300 and 400 of which were abdominal hysterectomies. He stated that he had never injured a ureter in any of those gynecological procedures, either before or after the Lund surgery.

In rebuttal, the Lunds attempted to prove that on one or two other occasions the doctor had injured bladders during the performance of hysterectomies. The trial court denied an offer of proof with respect to this evidence. The trial court reasoned that the proffered evidence related to injuries to bladders, not ureters, and the injuries occurred during vaginal hysterectomies, not an abdominal hysterectomy, as was performed on Dixie Lund. The court therefore found the evidence was not relevant, and McEnerney had not "opened the door" to this evidence based on his testimony during his case-in-chief.

During jury deliberations, the jury submitted the following question to the presiding judge:

Judge Briles,

Our problem stems from differences in applying (and *accepting*) the instructions from the court. Particularly Ins. 12–16, 17, 20.

The condition of the jury is static, with no sign of a resolution in the future.

We ask for guidance of some sort.

[Signed by the jury foreman]

These instructions explained to the jury that the fact of injury alone did not conclusively prove that negligence had occurred and outlined the proof required by the

plaintiffs in order to find specific or general negligence. Following conference with counsel and by agreement of the parties, the court responded to the inquiry with Instruction No. 32, which generally restated the necessary finding for negligence and suggested the jury reread specific previous instructions.

The jury returned a sealed verdict. Verdict Form No. 3, signed by all of the jurors, read, "[w]e, the jury, find in favor of the Defendants and against the Plaintiffs." Along with the verdict form, the jury included another document, which read:

While we, the members of the jury, have found in favor of the Defendants, we wish to express to the court our concerns as citizens of the state concerned for the future welfare of current and perspective [sic] patients of Dr. MacEnerney [sic].

We recommend that this error of Dr. MacEnerney be a matter of public record, and that both his current and perspective patients be completely informed of this matter, whether by personal consultation, personal letter, or both.

In addition we strongly suggest that the court cite this matter to the appropriate medical associations and agencies pertaining to the specialty of Obstetrics/Gynecology.

Lastly, we admonish Dr. MacEnerney to take great care in the future of his practice that this matter may never be repeated again.

Concerning the Plaintiffs, the jury recommends and strongly suggests that Dr. MacEnerney, in accordance with the moral obligations implicit in the physician's creed of First to Do No Harm, pay the Lund's [sic] $4,978.88 as just recompense for their out of pocket expenses.

If it please the Court, we leave this in the hands of the Honorable Margaret S. Briles.

Respectfully,

[Signed by the jury foreman]

When the court attendant received the sealed verdict, she telephoned the trial judge. Upon hearing a portion of the separate handwritten statement, the judge instructed the court attendant to stop reading the note, return it to the jury, and advise the jury that the document was not proper and would not be accepted by the court. The court attendant complied. The trial judge thereafter entered judgment on the verdict, based on the verdict form, in favor of the defendants and against the Lunds.

The Lunds attempted to introduce affidavits from two jurors to support a motion for new trial. The affidavits suggest that the jury would not have reached a unanimous verdict in favor of the defendants had the jury been aware that the separate letter would not have been accepted by the court. The trial judge found that the separate letter was not inconsistent with the verdict form and was surplusage. The trial court denied the Lunds' motion for new trial.

II. *The jury verdict and the admissibility of the jurors' letter and affidavits to impeach the verdict.*

■ A. The scope of review for determining the substance of the verdict is for correction of errors at law. *Prendergast v. Smith Labs, Inc.,* 440 N.W.2d 880, 884 (Iowa 1989).

■ The Lunds argue that the jurors' letter and formal verdict as expressed in the verdict form must be taken together to form the true verdict of the jury. At least, the Lunds argue, the letter and verdict form are irreconcilable and therefore require a new trial on the matter. We are not convinced by either argument.

We have previously held that a note or written message attached to a verdict was mere surplusage, and the manner in which the jury reached its verdict inhered in the verdict. In *Cavanaugh v. Jepson,* 167 N.W.2d 616 (Iowa 1969), the jury sent a written note out of the jury room just before it returned its verdict in favor of the defendant. The note stated, "[w]e found both parties guilty." In discussing whether this note could be considered in the plaintiff's appeal, we stated:

We do not believe this note can be considered in determining the basis for the jury's verdict anymore than any other statement of one or more jurors could. The proceedings in the jury room and the manner in which the jury reaches its verdict, in the absence of misconduct or fraud, inhere in the verdict.

An oral statement, or even an affidavit, by a juror setting forth this same information could not be used to explain, enlarge, or set aside a verdict. We see no reason for a different rule here. We have several times held a note or written message attached to a verdict and not in response to an interrogatory was mere surplusage.

*Id.* at 624.

We agree with the trial court that the letter returned with the sealed verdict is an expression of the frustration a jury would naturally feel in a difficult case, and is not intended to controvert or alter the formal verdict returned in the same envelope. The letter begins, "[w]hile we, the members of the jury, have found in favor of the Defendants," which affirms the formal verdict. Its terms are precatory in nature: "we wish to express our concern"; "we recommend"; "we strongly suggest"; and "the jury recommends and strongly suggests." Precatory words express an entreaty, request, desire, wish, or recommendation. *See In re Hansen,* 264 N.W.2d 746, 749 (Iowa 1978); Black's Law Dictionary 1176 (6th ed. 1990). The jury based its suggestion that Dr. McEnerney pay some of the Lunds' expenses on "moral obligations," not on a finding of negligence. Finally, the note returned during deliberations, in which the jury reported that it had difficulty applying and *accepting* the court's instructions regarding negligence, implies that the jury was frustrated at the prospect of finding injury at the hands of the defendants and yet assigning no responsibility because the doctor acted with the requisite skill and care. Unlike the authority from other jurisdictions cited by the Lunds, the trial judge's belief was not used to improperly *reform* the jury verdict. *See Wright v. Mayberry,* 158 Ariz. 387, 391, 762 P.2d 1341, 1345 (Ct.App.1988).

Although the accompanying letter is not in the nature of answering special interrogatories submitted to the jury, we also consider the principles behind the well-settled rule that, when special interrogatories appear inconsistent with a general verdict, all reasonable presumptions are given in favor of the general verdict. *Dutcher v. Lewis,* 221 N.W.2d 755, 761 (Iowa 1974); *Fischer v. Hawkeye Stages,* 240 Iowa 1203, 1206–07, 37 N.W.2d 284, 286 (1949).

Under these circumstances, we hold that the letter is not inconsistent with the formal verdict and is mere surplusage that cannot be considered part of the jury's verdict nor be used to impeach the jury's verdict. As such, the letter does not affect the formal verdict by requesting remedies unauthorized by law.

**B.** Iowa Rule of Evidence 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

*See also* Fed.R.Evid. 606(b). In Iowa, we have adopted the federal rule, which provides that juror affidavits may be used to impeach a verdict if *external* pressures affected that verdict, but may not use such affidavits to impeach a verdict based on *internal* workings of a jury. The rule was adopted in *Ryan v. Arneson,* 422 N.W.2d 491 (Iowa 1988), which upheld the trial court's refusal to accept juror affidavits to

impeach a punitive damages award as a quotient verdict:

> Based on Iowa's adoption of language identical to Federal Rule of Evidence 606(b), and the policy reasons for insulating the manner in which the jury reaches its verdict, we now adopt the federal rule which protects each of the components of deliberation including juror arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process occurring in the jury room.

*Id.* at 495; *see also Hobbiebrunken v. G & S Enters., Inc.,* 470 N.W.2d 19, 22 (Iowa 1991) (juror affidavits could not be used to challenge the damages award based on jurors' speculation of the plaintiff's affluence). This is a similar case. The juror affidavits do not relate to any external pressure bearing on the decision-making process, but relate directly to internal deliberations, discussions, and mental and emotional reactions that the rule is meant to insulate.

In *Prendergast,* 440 N.W.2d at 884, we permitted jury testimony to show that the jury had failed to make any determination of total damages. Jury affidavits satisfied the court that the jury had failed to complete the adjudicative process, and the court granted a new trial on the issue of damages. *Id.* However, we stated:

> If the issue were whether a verdict may be overturned because it was induced by the jury's misunderstanding of the court's instructions, rule 606(b) would render juror testimony inadmissible for purposes of achieving that result.... Once that finding has been solemnized in a formal verdict accepted by the court it may not be impeached on the ground that it was induced by juror misapprehension as to the controlling principles of law.

*Id.* This is not a case of a jury's failure to decide the issue before it. The letter appears to be a product of dissatisfaction with the result that the law required when the jury applied the facts of the case to the instructions given. The jurors' letter and affidavits cannot be used to impeach the formal verdict in favor of the defendants.

III. *Exclusion of evidence of other injuries.*

■ The scope and extent of cross-examination rests largely in the trial court's discretion, and its ruling on such questions will not be disturbed unless an abuse of discretion appears. *Shepherd v. McGinnis,* 257 Iowa 35, 45, 131 N.W.2d 475, 481 (1964). In *Shepherd,* we reversed for an abuse of discretion when the trial court allowed cross-examination that ventured into areas remote from the injury claimed. *Id.*

■ In the instant case, the trial court refused to admit evidence offered by the Lunds that, on one or two occasions following the procedure performed on Dixie Lund, Dr. McEnerney caused injuries to other patients. Evidence of other occurrences must be relevant and not too remote or collateral such as to lead the jury astray. *Id.* at 45–46, 131 N.W.2d at 481. At trial, the Lunds failed to show how the later injuries related to the injury to Dixie Lund. In the order denying the motion for new trial, the trial court found that the other occurrences involved damage to the patients' bladders during vaginal hysterectomies, while Lund sustained injury to her ureter during an abdominal hysterectomy. We find that the trial court did not abuse its discretion in excluding the evidence for lack of showing of similarity between Lund's injury and the other occurrences.

AFFIRMED.