STATE OF IOWA, Appellee, v. J. E. EASTER, Appellant.

**EVIDENCE:** Memorandum Entries in re Material Facts. Memorandum entries of material facts are admissible (a) whenever it appears that such entries so stimulate the memory that the witness is enabled to recall the facts recited therein, independently of the entries, or (b) whenever they are insufficient to so stimulate the memory, but the witness knows that, when he made the entries, he possessed the truth concerning them, and made the entries in accordance with such truth.

*Appeal from Mahaska District Court.*—HENRY SILWOLD, Judge.

FEBRUARY 17, 1919.

DEFENDANT was indicted for perjury, convicted, and appeals.—*Reversed and remanded.*

*S. V. Reynolds, J. C. Heitsman,* and *Lewis & Dickson,* for appellant.

*H. M. Havner,* Attorney General, for appellee.

GAYNOR, J.—Defendant was charged with the crime of perjury, entered a plea of not guilty, and was tried and convicted.

The alleged perjury is predicated on the following

facts. One James W. Taylor was indicted and tried on a charge of larceny. He undertook to negative the charge of larceny by showing that he had purchased the property from someone in the regular course of business, and to this end, called this defendant to testify. Just when it is claimed that Taylor committed the larceny, does not affirmatively appear. We assume it was about the 27th day of May, 1915. This defendant, called by Taylor, testified that, on the 26th day of May, 1915, he was at Oskaloosa, met Taylor there, and stayed with him that night in a tent, and was there with him on the morning of the 27th; that, on the morning of the 27th, two men came to Taylor's tent, and had in their possession the property alleged to have been stolen; that Taylor purchased the property from these men, and paid them a consideration for it. We take it that this property was found in the possession of Taylor. This testimony, therefore, was material to the issue then on trial. It is for the giving of this testimony that this defendant is indicted.

It is the claim of the State that this defendant could not have been at Taylor's tent in Oskaloosa, either on the 26th or 27th, for the reason that he was then at Moravia, a town some 50 miles distant from Oskaloosa.

It appears that this defendant began boarding with people by the name of Woodward, at the town of Moravia, on May 1, 1915. The State undertook to prove that he was at Moravia, and not at Oskaloosa, at the time he claims to have seen Taylor purchase the property. To this end, they called Woodward and his wife, who testified, in substance, that they had been acquainted with the defendant for about three years; that, since May 1, 1915, he had boarded with them; that they kept a book, showing the amounts paid and the dates when he was absent. This book was produced on the trial. They testified that, if he was absent but one meal, they made no account of it in the

book; but, if he was absent a considerable number of meals, they made entry in the book, on his return, stating the date when he left and the date when he returned, and the number of meals missed. The entries in the book, material to this controversy, are:

In account with Easter.

| [First half of double page.] | | [Second Half.] | |
|---|---|---|---|
| Supper Fri. | | May 7-15 | |
| Went to Oska. | | May 15 | |
| Returned for breakfast | | 19 | |
| Went to Searsboro for breakfast | | May 27-R    Thursday | |
| 6-10 Cr. By Cash | $18.00 | May 15 to 19-11 meal | |
| 6-10 Cr. By Cash | 9.00 | May 27 to J. 3 18 meal | |
| 171 meals | | June 26 12 meal | |
| | | July 3-7 10 meal | |
| Bal. Due | .85 | July 3 '85 off 13 | |
| July 20 check | 9.00 | Aug 14 to 181 off 13 | |
| Aug. 7 check | 9.00 | Aug 21-23 | off 04 |
| | | Aug 23-26 | off 05 |
| Bal. Due Sept. 1st. | | 12.36 | |
| | | Sept. 2s | 22 |
| Bal. due to date | | $11.50 | |

This book was offered by the State, and admitted in evidence over defendant's objection. This is one of the errors relied upon by the defendant for reversal.

The Woodwards, husband and wife, both testified touching this book. Neither testified to having an independent recollection of any matter stated in the book. Neither testified to having made any particular entry in the book. The testimony is: "We made a record of meals missed when he returned." When asked whether he went away to Searsboro on the 27th, and returned on June 3d, as shown by the book, the answer was:

"The book says he went away then and returned then.

According to the book, Easter was at our house on the 26th and on the 27th."

Neither testified to any independent recollection of the making of these entries, or that they were true at the time they were made. Both testified that they had no distinct personal recollection of the defendant on the 26th or 27th, or his whereabouts; that the entry of the date of his leaving was not made at the time he left, but on his return. They further testified that defendant settled by this book; that the defendant had this book in his hands at the time of settlement. It does not appear that his attention was called to any particular item or entry. It does not appear, affirmatively, when the settlement was made. The witness testifies:

"We do not remember when he left. We had no hotel register. Just kept a memorandum, and settled when he returned. He made final settlement some time after he left."

Some of the entries were made in the handwriting of Mr. Woodward, and some in the handwriting of Mrs. Woodward. It does not appear in whose handwriting the particular entries relied upon were made, or when they were made, or whether they were true or not at the time they were made.

Evidence is a guide to the jury in determining the existence or nonexistence of facts about which there is dispute. The evidence offered to sustain a disputed fact must have some substantial basis to rest on. Before a memorandum of this kind is admissible to prove the existence of a fact therein recorded, it must be made to appear that the fact therein recorded was correctly entered, and that the memorandum speaks the truth touching the disputed matter. It does not, of itself, prove the truth of the matters therein stated. The truth must be found in the testimony of some living witness, who knows and can say that, at the time the

record was made, he had personal knowledge of the matters therein recorded, and that he made, or caused it to be made, as a record of facts at the time within his knowledge. He may not be able to recall the transaction, by effort of memory; yet, if he knows that the matters therein recorded were, at one time, within his knowledge, and that, while so within his knowledge, he made this record,—that it was then his purpose or duty to truthfully record the facts therein stated,—then the memorandum becomes evidence of the fact, not by reason of its recitals, but because, by the testimony of the living witness, it is made reasonably certain that it speaks the truth. One called to testify as to the existence or nonexistence of a fact, may be able to recall the fact by an effort of memory, and state the fact truthfully as of memory. He is then competent to testify as to what the fact actually is. He may be called as a witness to testify to a material fact, and, when called, may not be able to recall the fact; yet his memory may be refreshed by an examination of some instruments submitted to him. If, then, he is able to speak to the existence of the fact— independent of the memorandum—as of his own personal recollection, he is competent, and is permitted to testify. This is because his mind, by the refreshing influence of the memorandum, is able to recall its existence, and he then speaks to its existence as of his independent recollection, refreshed by the instrument. This does not make the instrument competent to speak; but, by its operation on the mind of the witness, the mind becomes repossessed of the fact, and the witness is able to speak to the fact, through power of recollection. One may be called as a witness who cannot recall the matter about which he is called to testify. He may not be able to refresh his memory so that he is repossessed of the fact; but it may be made to appear that, at some time in the past, he had a personal knowledge of the fact, and made a record of it. If, then, he is

able to say that he made the entry, or caused it to be made, and at the time it was his purpose or duty to record the fact as it then existed, the record becomes a competent witness, not because it is a record of an event, but because it speaks the past knowledge of a witness to a fact occurring within the knowledge of the witness, truthfully recorded.

This memorandum was not admissible in evidence. The proper foundation was not laid, under any of the rules hereinbefore indicated. A memorandum is, at best, but secondary evidence of the facts of which it speaks. The primary evidence is the knowledge of the witness. His knowledge is the basis upon which the memorandum must rest. See *Curtis v. Bradley,* 65 Conn. 99 (28 L. R. A. 143) ; *State v. Brady,* 100 Iowa 191, 192. For the error in admitting this memorandum, or book, the case must be reversed.

Other errors are complained of, but they seem not to have been raised in the court below, and are not discussed here.

For the error pointed out, the case is—*Reversed and remanded.*

LADD, C. J., PRESTON and STEVENS, JJ., concur.