Joseph CARSON, d/b/a Carson Grain,
Troy Mills, Iowa, Appellee,

v.

Roxie MULNIX, Jr., Appellant.

No. 60053.

Supreme Court of Iowa.

March 22, 1978.

David A. Elderkin, of Wadsworth, Elderkin, Pirnie & Von Lackum, Cedar Rapids, for appellant.

Kenneth L. Moon, Cedar Rapids, for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, LeGRAND, and REYNOLDSON, JJ.

MASON, Justice.

This is an appeal by defendant, Roxie Mulnix, Jr., from an adverse judgment rendered in a law action tried to the court. March 5, 1974, plaintiff, Joseph Carson, d/b/a Carson Grain, Troy Mills, Iowa, instituted an action in the Linn District Court seeking relief on the theory defendant had breached an oral contract made January 22, 1973, for the delivery by the end of 1973 of 10,000 bushels of corn at $1.34 per bushel.

Plaintiff alleged that in reliance on the contract he had sold the grain contracted for for delivery on or before January 1, 1974; defendant delivered only 2,709.11 bushels of corn and was paid $3,431.86 therefor but refused to deliver the remainder of the corn; and the price of corn on December 31, 1973, was $2.50 per bushel. Plaintiff prayed for damages in the amount of $8,457.43 (December 31, 1973, market price minus the January 22, 1973, market price times the undelivered bushels).

In answer defendant denied he was to deliver the corn and alleged plaintiff was to pick up the corn at defendant's farm no later than two or three weeks after the date of the contract.

After trial to the court in this matter, the court found for plaintiff and awarded him $8,165.79 plus interest from January 1, 1974. The trial court in its findings of fact noted the parties disputed the time for delivery under the contract but concluded "time was not of the essence." The court explained its use of this phrase meant the performance in full by one promisor was not a condition of the duty of the other promisor to render his return performance. The court found defendant was under a

contractual duty to perform within a reasonable period of time and plaintiff was under a similar duty to assist his promised performance by hauling the corn in the agreed time and manner.

At trial plaintiff testified he expected to receive the corn whenever it was shelled but that he gave defendant until December 31 because that was the date upon which he had to conclude his contracts with the processors to whom he sold corn. Defendant testified he expected the corn to be picked up within a week or week and one half from the time the contract was made.

The court found 2709.11 bushels of corn were sold and paid for under the contract prior to March 1, 1973. The parties did not dispute this finding. They agreed plaintiff had picked up two loads at defendant's farm and defendant had hauled in six other loads. Defendant was paid after the corn was measured and appropriate discounts were given and penalties were assessed because of the transportation of the corn and its condition. Plaintiff testified he was told by defendant the remaining corn had to be shelled.

The court determined the agreement called for the sale of shelled corn and the obligation for shelling fell upon defendant. At trial, plaintiff testified it was defendant's duty to shell the corn. Defendant stated no agreement had been reached on this matter and he maintained plaintiff had shelled corn for him prior to the time of the present contract. Plaintiff agreed he had previously shelled corn but at the time of contracting here he had no sheller.

The court concluded defendant " * * * at all times material, had sufficient corn at his disposal to completely perform the contract but willfully failed to do so even after demand was made by Plaintiff for that portion of the contract goods which remained undelivered."

At trial, the parties agreed the corn defendant was to sell had been picked and stored before the contract was made. They disagreed as to how much of it was shelled or unshelled and as to whether the corn was available to plaintiff any time he chose to pick it up.

Plaintiff testified he had driven to defendant's farm and from the driveway had observed corn on the cob in defendant's crib. He explained he knew from the type of crib it held at least 5,000 bushels and that it was full. Later he stated he was not sure the crib was full because he had not climbed to the top.

Defendant agreed he had unshelled corn in the crib but explained it was only half full. He stated he had 6,500 bushels of shelled corn in the drying bin behind the crib.

Plaintiff had observed the drying bin but had noted an Agricultural Stabilization and Conservation Committee seal on it. He stated it was his usual practice to have the seller of the corn arrange to have the Committee people come out and remove the seal when the corn was sold.

Defendant testified plaintiff had agreed to handle the removal of the seal and plaintiff had arranged a removal on the sale of some beans prior to the date of the making of the contract herein. Neither party arranged for the seal to be removed so the other party could perform its duty under the contract.

The court found plaintiff was, at all times material, ready, willing and able to transport the corn from defendant's farm to plaintiff's place of business. It stated plaintiff only needed to show transportation was generally available to defendant if defendant wished to avail himself of it. It concluded plaintiff did not need to prove he had sent his trucks to defendant's farm to pick up the remaining corn. It specifically determined defendant's failure to deliver the corn was not caused by any failure on plaintiff's part to provide vehicles for transporting the corn.

This finding was apparently in response to the parties' pleadings. In his petition plaintiff had alleged he was ready, willing and able to perform the contract in all respects. In his answer defendant had made a general denial to this allegation.

After trial defendant made several post-trial motions which were all denied or overruled. He does not appeal from these decisions but instead appeals from the final judgment and every order and ruling inherent therein.

The issues stated by the parties in their written briefs and arguments present the following questions for review:

1. Must a party to a contract always plead and prove tender of payment under Iowa's enactment of the Uniform Commercial Code, section 554.2511(1)?

2. Did the trial court err in finding there was sufficient evidence to support its award of damages?

I. Defendant contends there was insufficient evidence to support an award of damages because plaintiff produced no evidence at trial that he tendered or even thought of tendering the remaining contract price in order to secure the remaining corn. In effect, he argues plaintiff could not recover any damages unless he first proved at trial he had tendered the remaining contract price.

Plaintiff maintains this issue should not be considered on appeal because it was not raised in any manner in the trial court.

In support of his contention defendant points out section 554.2511(1), The Code, provides as follows:

"Unless otherwise agreed tender of payment is a condition to the seller's duty to tender and complete any delivery."

As further support he draws attention to *Wire v. Foster*, 62 Iowa 114, 116, 17 N.W. 174, 175, wherein the following statement appears:

" * * * Before the plaintiff could maintain an action for the corn, or rather before he was entitled to damages because of its non-delivery, it was incumbent on him to tender the contract price and demand the corn."

In regard to defendant's contention we point out section 554.2208(1), The Code, provides as follows:

"Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement."

There is substantial evidence in the record that the present contract involved repeated occasions for performance by plaintiff. The only sale under this contract involved eight loads of corn received by plaintiff. The procedure followed with respect to these deliveries was for the corn to be measured and checked for quality at plaintiff's place of business prior to payment. The corn involved in this sale of 2709.11 bushels, not quite 30 percent of the entire amount of corn contracted for, was not paid at the rate of $1.34 a bushel but instead was paid at rates which took into account the fact defendant transported six of the eight loads and the fact the corn was not in perfect condition. These deliveries were handled without objection by defendant to the fact plaintiff did not tender payment prior to delivery.

The course of performance by the parties as shown in this record would justify a finding the parties agreed tender of payment by the buyer prior to delivery was not a condition precedent to the seller's duty to tender and complete any delivery.

It was alleged in paragraph 4 of the petition "that the plaintiff was ready, willing and able to perform said contract in all respects." Defendant in response denied this allegation generally. In its judgment the trial court found "plaintiff at all times material was ready, willing and able to transport said grain as it agreed to do."

The following pertinent comments are found in Annot., 94 A.L.R.2d 1215, 1217:

"In a buyer's complaint or counterclaim against the seller of goods to recover damages for the nondelivery of the goods, the buyer's alleging his readiness, willingness, or ability to perform his own obligations under the contract is an averment which in proper circumstances stands in lieu of an

allegation of the buyer's performance of, or offer to perform, such contractual obligations. * * *

"The necessity and sufficiency of a buyer's alleging his readiness, willingness, and ability to perform his obligations under a contract for the sale of goods, instead of alleging his performance of or offer to perform such obligations, in the buyer's complaint or counterclaim against the seller for nondelivery of the goods, depends on whether by the terms of the contract the buyer's performance is to precede, concur with, or follow the delivery of the goods. " * * *

"If the contract of sale as alleged provides that the buyer's performance shall concur with delivery of the goods, as in the case of payment for the goods on delivery, the weight of authority is that in the buyer's complaint or counterclaim against the seller for nondelivery of the goods, an allegation of the buyer's readiness, willingness, and ability to perform his undertakings is a necessary allegation, even if the seller was himself not ready, willing, or able to perform, unless the buyer alleges that the seller repudiated the contract. * * * If the buyer alleges a contract in which his performance is to concur with delivery, and further avers his readiness, willingness, and ability to pay, he need not allege his performance or offer to perform."

A somewhat more demanding statement is made in 6 Williston on Contracts, (Third Ed. Jaeger), section 832, pp. 93–95:

"Where conditions are concurrent, the allegation of tender need not be of absolute tender. A tender conditional on contemporaneous performance by the defendant is sufficient and necessary. It has sometimes been said that in such a case readiness and willingness on the part of the plaintiff is a sufficient allegation; or even that this is not part of the plaintiff's case, but * *, to maintain an action at law the plaintiff must not only be ready and willing but he must have manifested this before bringing his action, by some offer of performance to the defendant, for, otherwise, both parties might be ready and willing and each stay at home waiting for the other to come forward."

■ In his petition plaintiff alleged a contract in which his performance was to concur with defendant's performance. As stated, he alleged he was ready, willing and able to perform the contract in all respects. He also alleged demands were made upon defendant to deliver the corn. In his petition, then, he met the standards set out in both the Annotation and in Williston. In our opinion he sufficiently alleged tender of payment.

■ As noted defendant in his answer denied generally paragraph 4 of the petition. This denial was insufficient to raise the issue of tender. This was made clear in *Winter v. Honeggers' & Co., Inc.*, 215 N.W.2d 316, 327 (Iowa 1974), where we quoted with approval the following statement from *Henschel v. Hawkeye-Security Insurance Company*, 178 N.W.2d 409, 418 (Iowa 1970):

" * * *

"A general denial in a responsive pleading will not put in issue the question of performance or occurrence of a condition precedent."

This issue was not raised in the trial court and will not be considered on appeal.

■ II. On appeal from a law action tried to the court, as here, review in this court is only on errors assigned and the matter is not triable de novo. Under this limited extent of review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, they are binding on us and the judgment will not be disturbed on appeal.

■ Further, we must construe the evidence in the light most favorable to the trial court's judgment, whether contradicted or not, and this court will not weigh the evidence or pass on the credibility of the witnesses.

However, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, a conclusion of law drawn therefrom is correct, nor does it apply if in arriving at a finding the trial court erred in its ruling on evidence or in other respects upon questions of law which materially affect that decision. *Whewell v. Dobson,* 227 N.W.2d 115, 117 (Iowa 1975).

III. Defendant contends the trial court erred in awarding damages because the evidence was sufficient to sustain only an award of nominal damages. He does not argue the court used the wrong formula for computation of damages but rather that the date used for such computation and the market price determined for that date were not proper.

Plaintiff urged and the trial court used the date December 31, 1973, as the date on which to determine the market price of corn. Defendant argues this date was irrelevant to the issue of damages because the time for performance of the contract at issue had occurred in late spring or early summer of that year. He maintains it was then plaintiff had to enforce his rights against defendant and he could not wait until December to decide the breach had occurred.

Plaintiff counters contending the breach did not occur until December 31 when the contract ended. He maintains it was not until then that he learned of defendant's breach. He explained his contracts with sellers do not end until the end of the year when he must make good his contracts with his processors. He testified he expected delivery until that time.

■ Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Schiltz v. Cullen-Schiltz & Assoc., Inc.,* 228 N.W.2d 10, 16 (Iowa 1975).

■ Basic test of relevancy is whether challenged evidence makes the desired inference more probable than it would be without evidence and this determination is

a matter for exercise of the trial court's discretion.

■ The trial court has discretion to exclude evidence when its probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, misleading jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence. *Kalianov v. Darland,* 252 N.W.2d 732, 735–736 (Iowa 1977).

■ Here the fact of the date of the breach was a fact of consequence to the determination of the action. Plaintiff's testimony the date of breach was December 31 made the existence of such a date more probable; therefore, the evidence was relevant.

Defendant's contention plaintiff's rights against him were created in late spring or early summer is without merit. Defendant admitted he held most of the corn for nine months and some for two years waiting for plaintiff to pick it up. If he considered the contract terminated in late spring or early summer he would not have held the corn that long, especially in light of other testimony he gave that the corn in the drying bin was spoiling in August of 1973 when he sold the corn therein for either $2.28 or $2.50 a bushel. He stated on cross-examination he did not consider the contract inoperative until nine months after it was made.

The court found the time plaintiff learned of the breach was December 28, 1973. The earliest plaintiff could have learned of the breach here was within a week or two after August 14, 1973. Before that date plaintiff had his secretary send out notices to defendant that plaintiff needed the corn and that it was overdue. None of these notices apparently demanded delivery of the corn. August 14 plaintiff had his secretary send defendant a note giving him one week to deliver the corn. Defendant did not respond to this note.

■ Assuming arguendo plaintiff could have considered defendant's silence as a repudiation, we find his wait until December 28 to consider the contract breached was not unreasonable. If defendant repu-

diated the contract a week after August 14 this repudiation would amount to an anticipatory repudiation because it would have occurred prior to the termination date of the contract, December 31.

Section 554.2610, The Code, contains the following pertinent statement:

"When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may

"a. for a commercially reasonable time await performance by the repudiating party; * * *."

We do not find under the record before us plaintiff's wait until December 28 was unreasonable.

Defendant contends evidence as to the price of corn on December 28 should not have been admitted. He contends the trial court erred in overruling what he considers his timely and proper objection to such evidence.

At trial plaintiff attempted to introduce evidence of his knowledge of the price of corn at the end of 1973. He stated he could not remember the exact price but he had marked it down in a book he kept of such information. Plaintiff's attorney asked him if it would refresh his memory if he looked at the book and asked him if he wished to do so. At this point defendant's attorney objected stating the book was hearsay and was not an official document. At this point the court interjected its opinion plaintiff's attorney could qualify plaintiff as to knowledge of the price and then refresh his memory.

The following incident then occurred:

"Q. Let me ask you if on any particular day at the end of 1973, you, yourself, had knowledge of the price of corn? A. Yes.

"Q. Paid at your elevator? A. Yes.

"Q. Or the elevators in this area? A. Yes, it's in that book what we was paying that day.

" * * * *

"Q. And did you, on those occasions, get that information? A. Yes.

"Q. And is that the way you ran your business by— A. That's right.

"Q. —by obtaining prices. A. Yes.

"Q. And what source did you use to get your prices? A. Some of the markets called us, and we called the markets.

"Q. Yes, and do you know those to be right and accurate because you followed up on them from time to time? A. Yes.

"Q. So those were dependable, were they? A. Yes.

"Q. I will ask you whether or not you actually made any notation then concerning your records concerning those particular invoices on the various— A. Yes.

"Q. —days? A. Yes.

" * * *

"Q. I hand you the book marked Plaintiff's Exhibit 1 and could you turn to the page of December 31st and see if you could find such a recollection there? A. I am sure I can.

"Q. Or within a day or two.

"MR. ELDERKIN: Now, wait a minute, before he looks at that now, I'd like to ask you a question. At the most, all you did was look in some paper or call somebody and then write the price in that book, is that correct?

"THE WITNESS: We buy accordingly to that date.

"MR. ELDERKIN: Okay, somebody called you or you called them?

"THE WITNESS: And get our prices of what we can book corn for that day.

"MR. ELDERKIN: Somebody told you over the telephone what the price was?

"THE WITNESS: Yes.

"MR. ELDERKIN: And you wrote it down in that book?

"THE WITNESS: Yes.

"MR. ELDERKIN: I object to anything in here as hearsay, double hearsay. He got it from somebody else and wrote it in a book and now is referring to the book to get

what the price is. * * * Again any reference to the book is double hearsay, * *."

The court overruled the objection. The witness then looked at the book and explained the closest day he had to December 31 was Friday, December 28 and that there would be no prices for Monday, December 31.

Plaintiff's attorney then asked him if he had refreshed his memory by looking at the book. He answered yes and stated his recollection to be, "On the 28th we bought 5,000 bushel from Mr. Ralph Stern for $2.50." Plaintiff then explained the Friday price most generally held over the same to Monday.

It is evident from the foregoing record counsel was seeking to revive plaintiff's present recollection of the price of corn at plaintiff's elevator or elevators in the area at the end of 1973 by use of the black book as a memorandum. Its use as a past recollection recorded is not involved. Hence, we need not at this time distinguish between memoranda for the purpose of reviving present recollection and those which are records of past recollection. However, in this connection see *State v. Easter,* 185 Iowa 476, 170 N.W. 748; 3 Wigmore on Evidence, (Chadbourn Rev.), sections 734–738, 758–765.

Defendant's challenge to the admissibility of plaintiff's testimony as to the price of corn presents the question whether the present use of the book involved as a memorandum to revive plaintiff's present recollection was proper.

Plaintiff had testified he had a knowledge of the price of corn at the end of 1973. When asked what was the price of corn at the end of 1973 plaintiff testified that "it [price of corn] varied up and down there. I think during the summer it was $3, and at the first day of January it was somewhere between $2.50 and $2.80, I would say. I can't remember exactly."

On cross-examination plaintiff was asked, "Do you know for a certainty what the price of corn [was] on the commodity market on December 31st, 1973?" He answered, "Not exactly. I couldn't say without looking in the book. It's in that black book." Plaintiff's counsel then asked, "If you had your book to refresh your memory, could you answer that question?" Plaintiff answered, "Yes, sir."

Then followed the record previously set out.

In connection with the present problem we quote from 3 Wigmore section 758:

"L. Hand, J., in *United States v. Rappy,* 157 F.2d 964, 967 (2d Cir. 1946), cert. denied, 329 U.S. 806, [67 S.Ct. 501, 91 L.Ed. 688]: Any thing may in fact revive a memory: a song, a scent, a photograph, an allusion, even a past statement known to be false."

In section 759 the following appears:

"Ellenborough, L.C.J., in *Henry v. Lee,* 2 Chitty 124, 125 (1810): If upon looking at *any* document he can so far refresh his memory as to recollect a circumstance, it is sufficient; and it makes no difference that the memorandum is not written by himself, for it is not the memorandum that is the evidence but the recollection of the witness.

"This concluding expression of Lord Ellenborough's concisely states the principle, and has become a classic phrase in judicial quotation." (Emphasis in original).

In McCormick on Evidence, (Second Ed.), section 9, pp. 15–18, we find the following explanation of reviving present recollection:

"* * *

"At trials, the practice has long been established that in interrogating a witness counsel may hand him a memorandum to inspect for the purpose of 'refreshing his recollection,' with the result that when he speaks from a memory thus revived, his testimony is what he says, not the writing. This is the process of *refreshing recollection* in the strict and accurate sense. * * *

"* * *

"Nevertheless, most courts today when faced with the clear distinction between the two uses of the memoranda, will adhere to the 'classical' view that any memorandum or other object may be used as a stimulus to present memory, without restriction by rule

as to authorship, guaranty of correctness, or time of making. On balance, it would seem that this liberality of practice is the wiser solution because there are other sufficient safeguards to protect against abuse. The first safeguard is the power of control by the trial judge. It is a preliminary question for his decision whether the memorandum actually does refresh, and from the nature of the memorandum and the witness's testimony he may find that it does not. Moreover, in the exercise of his discretion to control the manner of the examination, as in the case of leading questions, he may decline to permit the use of the aid to memory where he regards the danger of undue suggestion as outweighing the probable value.

"The second safeguard is the rule which entitles the adverse party, when the witness seeks to resort to the memorandum, to inspect the memorandum so that he may object to its use if ground appears, and to have the memorandum available for his reference in cross-examining the witness. With the memorandum before him the cross-examiner has a good opportunity to test the credibility of the witness's claim that his memory has been revived, and to search out any discrepancies between the writing and the testimony.   *   *   *

"Not only may the adversary inspect the memoranda used to refresh memory, but he may submit them to the jury for their examination. On the other hand, the party offering the witness may not do so unless the memoranda constitute independent evidence and are not barred by the hearsay rule. The cardinal rule is that unless they may be introduced under the hearsay rule or one of its exceptions, they are not evidence, but only aids in the giving of evidence. Consequently, a copy may be used without accounting for the original." (Emphasis in original).

See also *Williams v. Stroh Plumbing & Electric, Inc.,* 250 Iowa 599, 604–606, 94 N.W.2d 750, 754–755, 82 A.L.R.2d 465, 471–472; *Shepherd v. McGinnis,* 257 Iowa 35, 48–49, 131 N.W.2d 475, 482–483; *U.S. Homes, Inc. v. Yates,* 174 N.W.2d 402, 404–406 (Iowa 1970).

■ Plaintiff did not attempt to introduce the memorandum as evidence. Counsel was using it as an aid to obtain testimony of plaintiff as to the price of corn at the end of 1973. Its use as disclosed by the present record is not open to attack for any of the reasons urged in defendant's objections. Defendant's contention the trial court was in error in permitting its use is without merit.

■ As shown by the record, plaintiff had been in the grain and implement business since 1966. He bought and sold corn. He conducted the business on the basis of his knowledge of the market price of corn on a given day. Plaintiff testified he had knowledge of the price of corn at his elevator and at elevators in the area at the end of 1973. This testimony was based upon knowledge he had gained by occupational experience. His testimony was not inadmissible for any of the reasons urged by defendant in his objections.

Defendant finds fault in the fact the book was not put in evidence. As is explained in the previously set out portions of McCormick on Evidence, it was only defendant here who could have gotten the book admitted into evidence. He did not do so. See also 3 Wigmore on Evidence, section 763.

Defendant argues the use of December 28 as the date for determining damages was improper under the Code. The court based its damage calculations on section 554.2713 of the Code which is as follows:

"1. Subject to the provisions of this Article with respect to proof of market price (section 554.2723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this Article (section 554.2715), but less expenses saved in consequence of the seller's breach.

"2. Market price is to be determined as of the place for tender or, in cases of rejec-

tion after arrival or revocation of acceptance, as of the place of arrival."

Section 554.2723 provides in paragraph two as follows:

"2. If evidence of a price prevailing at the.times and places described in this Article is not readily available the price prevailing within any reasonable time before or after the time described or at any other place which in commercial judgment or under usage of trade would serve as a reasonable substitute for the one described may be used, making any proper allowance for the cost of transporting the goods to or from such other place."

The Uniform Commercial Code comment on this section contains the following:

" * * *

"This section is not intended to exclude the use of any other reasonable method of determining market price or of measuring damages if the circumstances of the case make this necessary."

On the basis of these two sections and the comment set out, we find the use of December 28 was reasonable and the trial court's use of this date was not error.

We have considered every contention and argument urged by defendant and find none that require reversal.

The case is therefore—Affirmed.