**Danuta FALCZYNSKI, Appellant,**

v.

**AMOCO OIL COMPANY d/b/a**
**Amoco Customer Service**
**Center, Appellee.**

No. 96–0559

·Court of Appeals of Iowa.

May 29, 1997.

---

Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, for appellant.

Condon A. McGlothlen and Michael A. Warner of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Illinois, and James R. Swanger of Belin, Harris, Lamson, McCormick, Des Moines, for appellee.

Rick Autry, Assistant Attorney General, amicus curiae for Iowa Civil Rights Commission.

Heard by HABHAB, C.J., and CADY and HUITINK, JJ.

HABHAB, Chief Judge.

Appellant Danuta Falczynski, a former employee of appellee Amoco Oil Company (Amoco), appeals the trial court's dismissal of her disability discrimination claim. We affirm.

In June 1988, Amoco hired Falczynski as an accounting clerk. Despite regular attendance and two satisfactory performance reviews during the first two years of her employment, Amoco supervisors did not find her skill level to be what they had expected. Believing she would perform better with repetitive work, they transferred her to another section of the accounting department to perform data entry work. Although Amoco allowed her to remain at her current pay and benefit level, Falczynski was unhappy with the transfer and with her new supervisor.

As the first two years of her employment drew to an end, Falczynski began to experience health problems that affected her attendance. She visited her family physician, Dr. Kelly Bast, who diagnosed her condition as bronchitis and allergies. She also saw the company nurse at Amoco, complaining of shortness of breath, pleuritic chest pain, heart pain, and chest burning. Uncertainty regarding the true nature of her illness prompted her family physician and a specialist, Dr. Roger Liu, to run a number of tests on several occasions. Ultimately, a physician at the University of Iowa Hospitals and Clinics diagnosed her condition as an atypical form of asthma.

Symptoms of her illness and the road to its treatment caused her to miss work for varying periods of time on the following dates in 1990:

| | | |
|---|---|---|
| January 17–24 | May 17 | August 16 |
| April 11 | May 24 | September 5–7 |
| April 26 | June 14 | September 13–24 |
| May 1 | June 24–26 | October 2 |
| May 3–4 | July 13 | |

By missing work on these dates, Falczynski ran afoul of the attendance policy at Amoco, which defines an "occasion" of absence as any time away from work during normal shift hours, other than hospital stays, that exceeds sixty minutes. An employee is subject to termination for eight occasions within a twelve-month period, while fewer occasions warrant informal counseling or a formal warning letter.

Falczynski's supervisor counseled her throughout 1990 on both an informal and formal basis. When Falczynski's absences

reached ten, her supervisor and a human resources representative reviewed the attendance policy with her. At twelve absences, her supervisor had her sign a written warning letter. When her absences reached fourteen within a twelve-month period, Amoco terminated her employment.

Falczynski brought claims against Amoco based on national origin discrimination, disability discrimination, and breach of contract. Following trial, the district court dismissed all three claims. On appeal, the supreme court upheld dismissal of two of the claims, but reversed the dismissal of the disability discrimination claim and remanded for consideration under the appropriate legal analysis. *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 234–35 (Iowa 1995). The trial court entered its findings of fact, conclusions of law, and judgment on remand, which dismissed Falczynski's disability discrimination claim. The court found Falczynski was not disabled or qualified for her position.

■■■ *I. Scope of Review.* Our decision in this case is largely controlled by the applicable standard of review, which is at law for discrimination claims tried to the court. *Id.* at 230. The trial court's findings of fact carry the force of a special verdict and are equivalent to a jury verdict. *Papenheim v. Lovell*, 530 N.W.2d 668, 671 (Iowa 1995); *Meyers v. Delaney*, 529 N.W.2d 288, 289 (Iowa 1995). We are bound by the court's factual findings if substantial evidence supports them. *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 632 (Iowa 1990).

■■■ Evidence is substantial if reasonable minds would find it adequate to reach the same findings, even if we might draw a contrary inference. *Frontier Properties Corp. v. Swanberg*, 488 N.W.2d 146, 147 (Iowa 1992). "The possibility of drawing two inconsistent conclusions from the same body of evidence does not prevent a finding from being supported by substantial evidence." *Baty v. Binns*, 354 N.W.2d 777, 780 (Iowa 1984); *see also Papenheim*, 530 N.W.2d at 671 ("Evidence is not insubstantial merely

because it would have supported contrary inferences.").

■■■ When determining whether evidence is substantial, we view the evidence in the light most favorable to upholding the trial court's judgment. *Falczynski*, 533 N.W.2d at 230. We do so whether the evidence is contradicted or not, and we do not weigh the evidence or pass on the credibility of witnesses. *Carson v. Mulnix*, 263 N.W.2d 701, 705 (Iowa 1978).

■■■ When, as in this case, the trial court denied recovery because a party did not meet its burden of proof, the judgment will stand unless we find the party carried its burden as a matter of law. *Falczynski*, 533 N.W.2d at 230. We will so find "only when evidence is so overwhelming that only one reasonable inference on each critical fact issue can be drawn." *Id.*

■■■ *II. Disability Discrimination.* When, as here, an employer discharges an employee for a disability-related reason, the employee must prove he or she (1) has a disability, (2) was qualified for the position, and (3) was discharged because of the disability. *Boelman v. Manson State Bank*, 522 N.W.2d 73, 79 (Iowa 1994). As the supreme court noted, the threshold question for the trial court on remand was whether Falczynski proved by a preponderance of the evidence she was disabled. *Falczynski*, 533 N.W.2d at 234. The trial court found she did not meet her burden of proof, so the issue before this court is whether substantial evidence supports the trial court's finding she did not meet that burden.

At the time plaintiff's claim arose, Iowa law defined "disability" in this context as "the physical or mental condition of a person which constitutes a substantial handicap." Iowa Code § 601A.2(4)(1989).[1] The Civil Rights Commission promulgated rules that define a "substantially handicapped person" as "any person who has a physical or mental impairment which substantially limits one or more major life activities." Iowa Admin. Code r. 161–8.26(1)(1993).[2] "Major life activ-

---

1. Chapter 601A was transferred to chapter 216 beginning with the 1993 Code.

2. Amoco does not dispute Falczynski has a physical or mental impairment. Thus, the only part of

ities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* at r. 161–8.26(3).

Falczynski argues substantial evidence does not support the trial court's finding her condition did not substantially interfere with her ability to breathe or obtain satisfactory employment. She points to the testimony of Dr. Bast and Dr. Liu that asthma is a disability that substantially interferes with the major life activity of breathing. She characterizes this testimony as uncontradicted and undisputed which compels a finding she was disabled. She argues Amoco did not offer any evidence to refute these opinions.

We do not share Falczynski's view as to the evidence relied on by Amoco to support its claim. The opinions Falczynski relies on are conclusory, address asthma generally, and merely track the statutory and regulatory language. Amoco made effective use of cross-examination to solicit opinions on more specific work and health situations. Dr. Bast testified while a person with severe asthma cannot work regularly, treatment can reduce the severity to moderate or mild. He admitted a person should be able to work regularly even with mild or moderate asthma, and mild or moderate asthma should not substantially interfere with a person's ability to work. He testified when Amoco terminated Falczynski she would have had, at most, mild asthma.

Dr. Liu was also revealing on cross-examination as to asthma generally and to Falczynski's situation. He testified people with asthma frequently are short of breath with heavy housework, climbing stairs, and so on. He never detected Falczynski would have difficulty breathing except when she exerted herself. He admitted that at no time when he saw her did he observe symptoms that would substantially interfere with her ability to work, and testified most of the time a person with mild asthma is not suffering from symptoms that would substantially interfere with his or her ability to work. At no time in 1990 could he or Dr. Bast attribute Falczynski's symptoms to asthma.

the definition at issue involves the substantial

Concerning her employment at Amoco, Dr. Liu was aware Falczynski had a desk job and probably would not have any difficulty breathing while doing the type of physical exertion required by that job. Although Dr. Liu began to speculate about the exertion of walking into the office, he never finished that opinion and testified earlier Falczynski would have no difficulty doing normal accounting work or normal walking. Our review of the testimony does not support Falczynski's claim that all the expert testimony shows she was disabled or Amoco offered no legitimate evidence on this issue.

Dr. Bast testified as of March 30, 1989, Falczynski's throat was "a little bit reddish," her lungs were clear, and there was a burning sensation in her chest but an X-ray showed no abnormalities. Beyond the expert testimony, other evidence in the record supports the trial court's finding. Falczynski testified in January 1990 she complained of coughing, chest pain, and shortness of breath. She testified these symptoms were not affecting her job performance, however.

Much of the documentary evidence also supports the trial court's finding. On May 17, 1990, Dr. Liu noted Falczynski was in no acute distress and her lungs were clear in that no rales or wheezing was present. Out of fourteen visits to the company nurse, notes arising out of many of them indicated Falczynski's lungs were clear. Dr. Liu prepared a memo indicating no work limitation was needed. Reports from tests at Mercy Hospital and the University of Iowa Hospitals and Clinics listed a history of shortness of breath only on hills and stairs, and noted Falczynski lately had no problems with breathing.

Falczynski refers us to an affidavit in the Appendix she argues refutes these observations. That affidavit is dated six months after the trial court entered its judgment, however, so the trial court did not have that evidence before it for consideration. For that reason, we do not consider the affidavit. *See Norland v. Mason City*, 199 N.W.2d 316, 318 (Iowa 1972) (holding letter and subse-

limitation of one or more major life activities.

quent affidavit not part of trial court record and properly excluded from appeal record).

This review of the record precludes us from holding the trial court's finding was not supported by substantial evidence. Because we uphold the trial court's finding that Falczynski was not disabled, we do not need to address her other claims of error. *See Falczynski,* 533 N.W.2d at 234 ("If the [trial] court finds plaintiff was not disabled, the court, as fact finder, need go no further.").

**AFFIRMED.**