# IN THE COURT OF APPEALS OF IOWA

No. 23-2077
Filed December 18, 2024

IN THE MATTER OF THE ESTATE OF GARY MAXWELL, Deceased.

**GREGORY MAXWELL,**
    Appellant.

_____

**ESTATE OF GARY MAXWELL, by and through its Executors BARBARA MARTIN and KATHRYN MOSER,**
    Plaintiffs/Counterclaim-Defendants-Appellees,

**vs.**

**GREGORY MAXWELL,**
    Defendant/Counterclaimant and Third-Party Plaintiff-Appellant.

**vs.**

**BARBARA MARTIN and KATHRYN MOSER,**
    Third-Party Defendants-Appellees.
_____

Appeal from the Iowa District Court for Marshall County, Amy M. Moore, Judge.

Gregory Maxwell appeals the $626,397.58 judgment entered against him on claims by his father's estate for conversion and unjust enrichment. **AFFIRMED AS MODIFIED.**

S.P. DeVolder of The DeVolder Law Firm, P.L.L.C., Norwalk, and William L. Kutmus and Trevor Hook of Kutmus, Pennington & Hook, West Des Moines, for appellant.

Michael Marquess & Taylor Reichardt of Marquess & Hoyer Law Office P.C., Toledo, for appellee Estate of Gary Maxwell.

Sean K. Heitmann of Moore, McKibben, Goodman & Lorenz, LLP, Marshalltown, for appellees Barbara Martin and Kathryn Moser.

Heard by Schumacher, P.J., Badding and Chicchelly, J.J.

**CHICCHELLY, Judge.**

Gregory (Greg) Maxwell appeals the $626,397.58 judgment entered against him on claims by his father's estate for conversion and unjust enrichment. Greg challenges the district court's determination of liability and its damage calculation. He also contends the estate owes him payment for care he provided his father in his final years.

Although we agree that offensive issue preclusion cannot be applied to the question of Greg's liability on the estate's conversion claim, the record shows that Greg was unjustly enriched in the amount of $626,397.58. Because Greg failed to prove the estate owes him payment for caring for his father, we therefore affirm the district court's judgment as modified.

## I. Background Facts and Proceedings.

This appeal involves an intrafamily dispute that developed over more than two decades. The four-day bench trial resulted in nearly nine hundred pages of trial transcript. We summarize only the most relevant facts. *See Benton Cnty. Sav. Bank v. First Nat. Bank*, 162 N.W. 204, 205 (Iowa 1917) ("The questions presented are very largely fact questions, and, where there is a large record, as here, it is not practicable, and it is not our custom to attempt to set out the evidence in detail and try to harmonize the testimony of the witnesses in the opinion.").

Gary and Patricia (Pat) Maxwell had five children during their marriage: four daughters and one son. Although the couple were "very frugal," Gary and Pat acquired farm property that they leased for cash or under a sharecropping arrangement. After retiring, they built a one-story home in 1998 to live in during

their remaining years. Gary was diagnosed with Parkinson's disease around that time.

The couple's son, Greg, began to farm the land in 1999. Greg claims that around 2003, his parents asked him to help with his father's caretaking so that he would not have to go into a nursing home:

> They wanted to know if I would come home and keep—help keep Dad out of the nursing home, and in turn, they would help me establish a livable income, that they would pay for expanding the farm. They would pay for equipment. The equipment would be mine. I did not need to pay them back. They had a farm income. They had [a] pension. They had social security. They were not needing the money. They specifically told me, "The equipment is yours. You do not need to pay us back. Treat the farm as though it's your own. If you want to expand, expand it." And that is what I did.
> Q. And with this agreement that you had with your father, could you have done anything with the farm? A. I could have done anything that I wanted to, but of course I would have talked it over with my parents.

Greg expanded his farming operation over the years, and by 2007, he was working solely on the farm.

When Pat died in 2011, Gary's health declined. Gary's doctor told Greg that Gary needed a higher level of care. Greg claims that he agreed to move into Gary's home to provide this care, which his father promised to pay for. Greg, who viewed this as a continuation of the 2003 agreement, started recording his caretaking hours in a spreadsheet.

Gary suffered a stroke in 2015. By 2016, he was diagnosed with dementia. Gary's doctor believes that the stroke left Gary susceptible to influence and made it difficult for Gary to understand financial agreements. In April 2016, Gary began

receiving in-home professional care from around 6:00 a.m. until 6:00 p.m.[1]  He remained at home until he entered a nursing facility in June 2018.  Gary died that December.

During the final years of Gary's life, there were concerns about Greg spending Gary's money.  Between 2016 and June 2018, Greg made almost $35,000 in purchases with Gary's credit card.  Gary's bank contacted the Iowa Department of Health and Human Services, which began investigating Greg for possible financial abuse.  The department eventually referred the investigation to law enforcement, and in 2019, the State charged Greg with first-degree theft and dependent adult abuse based on the misappropriation of Gary's assets.

In 2022, Greg entered an *Alford* plea to third-degree theft in exchange for the State dismissing the dependent-adult-abuse charge.  The court sentenced Greg to serve a two-year suspended sentence and pay a fine, surcharge, and court costs.  The sentencing court also ordered Greg to pay victim pecuniary damages, if applicable, but the State never filed a statement of pecuniary damages.

Gary's estate sued Greg for conversion, breach of fiduciary duty, and unjust enrichment, claiming that Greg committed theft against Gary in the final years of his life.  It later dismissed the claim for breach of fiduciary duty.  Greg countersued the estate for breach of contract, unjust enrichment, and interference with contract, claiming that the estate owed him payment for the in-home care he provided Gary.[2]

---

[1] The cost of this care from May 2016 through May 2018 was $101,305.80.

[2] In May 2019, less than one week before the State filed criminal charges against him, Greg filed a probate claim asserting that the estate owed him $226,560.00 for caretaking services he provided to Gary.  Greg stated: "This Claim is only asserted if I am not provided my distribution under the terms of my father's Will."  He

The civil matter proceeded to a bench trial. The estate argued that Greg's plea to the third-degree theft charge precluded him from relitigating his liability for conversion between 2016 and 2018. It submitted an exhibit calculating damages for unjust enrichment that ranged from $458,532.36 to $1,423,520.26 based on four scenarios. Those scenarios varied depending on: (1) whether Greg was farming Gary's land under a sharecropping agreement or leasing the land from Gary, who was serving as Greg's bank; and (2) whether Greg owned the house he lived in.[3]

The court found that Greg's plea precluded him from relitigating his liability for conversion. Although third-degree theft only involves "at least $500," the court determined that he could be held liable for damages more than that amount. It determined that the estate proved damages of $241,469.33 for conversion.

On the issue of unjust enrichment, the court found that Greg farmed Gary's land under a sharecropping agreement and did not buy his grandfather's house in 1991. It accepted the estate's calculation of damages under this scenario, which amounted to $626,397.58. From that total, the court subtracted the of $241,469.33 awarded to the estate for conversion and awarded the estate the difference,

attached the spreadsheet itemization of his caretaking hours showing 14,840.25 hours of caretaking from January 2016 through June 2018.

[3] Greg claims he bought the house, which Gary's father once lived in and three or four acres from Gary and Pat for $30,000 in 1991. Greg testified that the title to the property was never transferred because Gary believed there was a tax advantage to keeping the property in his own name, and Gary paid the property taxes. Greg has no bill of sale or receipt for the purchase, and his sisters dispute that Greg bought the property.

In his will, Gary devised each of his children a portion of the farm property. After an appraisal, the will requires that the value of each share be equalized by cash distribution. The house, which was devised to Gary, is excepted from the appraisal and equalization.

$384,928.25 in damages, on the unjust-enrichment claim. The court denied and dismissed Greg's counterclaims, as well as his claim in probate. It entered judgment for the estate and against Greg in the amount of $626,397.58.

## II. Scope of Review.

The parties agree that this case was tried at law and our review is for correction of errors at law. *See* Iowa R. App. P. 6.907. The district court's findings have the effect of a special verdict, *see id.*, and they "are binding on appeal if supported by substantial evidence," *Walnut Creek Townhome Ass'n v. Depositors Ins.*, 913 N.W.2d 80, 87 (Iowa 2018) (citation omitted).

## III. The Estate's Claims Against Greg.

Greg challenges the judgment entered against him on the estate's claims of conversion and unjust enrichment. We address each in turn.

### A. Conversion.

We begin with Greg's challenge to the estate's conversion claim. He first contends that the district court erred by determining that his *Alford* plea to third-degree theft precludes him from contesting liability for conversion.

There are four elements to issue preclusion:

> (1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment.

*Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 451 (Iowa 2016) (citation omitted). When used offensively, the court also considers: "(1) whether the opposing party in the earlier action was afforded a full and fair opportunity to litigate the issues, and (2) whether any other circumstances are present that would justify

granting the party resisting issue preclusion occasion to relitigate the issues." *Id.* (cleaned up).

A determination that a plea in a criminal case has a factual basis can preclude a party from relitigating the essential elements of the offense in a civil case arising from the same event or transaction. *Emps. Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 23–24 (Iowa 2012). For instance, a criminal defendant who enters an *Alford* plea to a charge of first-degree theft cannot later contest that she committed the theft in a civil action to recover the stolen funds. *Id.* at 28. But first-degree theft only requires proof of misappropriation of property exceeding $10,000, so the amount by which the theft exceeded that amount is not an essential element of the offense. *Id.* Because "[h]er plea is valid whether she misappropriated $10,000.01 or $57,759.21," the defendant "had no incentive in the criminal proceeding to contest the amount by which her theft exceeded $10,000." *Id.* Thus, she could contest the amount by which the theft exceeded $10,000 in the civil action even though she could not relitigate whether she stole at least $10,000. *Id.* Following this logic, the district court held that Greg's *Alford* plea to third-degree theft precluded him from relitigating his liability on the estate's conversion claim. But because Greg's plea was to theft in an amount of more than $500, the court found that issue preclusion did not apply to the amount of the estate's damages.

Greg challenges the application of issue preclusion to his liability for theft because he "never copped his plea to the entire purported two-year period—he pled discretely and distinctly to committing an act of theft only within the indicated property value amount." The amended trial information charging Greg with third-

degree theft alleged that the theft occurred "on or about January 1, 2016 *through* or about December 12, 2018." (Emphasis added.) Nothing in the trial information or plea agreement limits the charge to one act of theft rather than a series of thefts over two years. Thus, the district court found that "that the doctrine of issue preclusion prevents Greg from relitigating the issue of whether he is liable for conversion occurring between January 1, 2016, and December 12, 2018."

Although the trial information does not limit Greg's admission to a single act, it does limit the amount of the theft to a value exceeding $500 but not exceeding $1000. *See also* Iowa Code § 714.2(3) (2016) (defining third-degree theft as "[t]he theft of property exceeding five hundred dollars but not exceeding one thousand dollars in value"). The holding of *Van Haaften*, in which the defendant admitted to a theft of more than $10,000 without any limit on the total amount, is distinguishable. Because the total amount of theft the estate alleges exceeds the amount that Greg pleaded to by over $240,000,[4] the district court erred by finding Greg was precluded from contesting his liability for theft in that amount.

---

[4] The estate identified many incidents of theft that occurred between 2016 and 2018, which the district court summarized in its ruling:

> Greg's checks to Dan's Auto, from Gary's account in August and September of 2016, totaling $2,163.58 (Ex. E);
> Greg's check to "Maxwell Farms," from Gary's account and written in April 2015 and negotiated in April 2016, for $10,000 (Ex C, p. 5; Ex. F, p. 1);
> Greg's check to himself, from Gary's account in May 2017, for $15,000 (Ex. F, p. 2);
> Greg's checks to himself, with the memo "Home Care," in February and April 2018, totaling $35,000 (Ex. F, p. 3-4);
> A deposit into Greg's account from Roeters Farm Equipment in July 2018 for $28,000 (Ex. C, p. 5);
> Greg's checks to Richter Farms, Ron Richter, and Bill Krohne for asparagus, from Gary's account in April and May of 2016, and December 2017, totaling $43,774.75 (Ex. H); and

**B. Unjust Enrichment.**

Greg next challenges the judgment entered on the estate's unjust-enrichment claim. He first contends there is insufficient evidence to show his liability.

"The elements of unjust enrichment are (1) enrichment of the defendant, (2) at the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit." *Livingood v. City of Des Moines*, 991 N.W.2d 733, 749 (Iowa 2023) (citation omitted). The estate alleged that between 2012 and 2018, Greg "was enriched by farming and other financial assistance from [Gary]," at Gary's expense, and that Greg never properly compensated Gary for the enrichment. The district court found the estate proved its claim for unjust enrichment:

> The Estate has clearly established that Greg was enriched at Gary's expense. The court further finds that the completely one-sided nature of the farming operation—wherein Gary paid for everything yet received none of the profits or any reimbursement—are certainly circumstances where it would be exceedingly unjust for Greg to retain the entirety of the benefit. This is especially true given the fact that this arrangement began in 1999, yet the Estate is only claiming damages from 2012 forward.

Greg argues that there is insufficient evidence supporting the district court's finding. He argues that the estate did not show any unauthorized use of Gary's property or funds and merely assumes that any benefits he received result from wrongful conduct.

---

Greg's deposits from HyVee for asparagus sales in May through July 2016, totaling $107,531.50.

Only one check meets the criteria for the third-degree theft charge to which Greg entered an *Alford* plea: Check # 4765, payable to Dan's Auto in the amount of $953.97 on August 26, 2016.

The parties presented contrasting evidence in support of their theories. The trial court's findings have the effect of a special verdict and equal a jury verdict, which limits this court's review. *See Carson v. Mulnix*, 263 N.W.2d 701, 705 (Iowa 1978). If substantial evidence supports the district court's findings and they are justified, they are binding and this court will not disturb the judgment on appeal. *See id.* The appellate court also "construe[s] the evidence in the light most favorable to the trial court's judgment, whether contradicted or not, and this court will not weigh the evidence or pass on the credibility of the witnesses." *Id.* The court is not concerned with whether the evidence supports a different finding but whether it supports the finding made. *Hutchison v. Shull*, 878 N.W.2d 221, 230 (Iowa 2016). Giving the district court the deference it is due, substantial evidence supports the judgment.

Greg also challenges the amount of damages awarded on the unjust-enrichment claim. He argues that the district court determined the amount of the estate's damages based solely on improper lay opinion testimony. We review the district court's evidentiary rulings for abuse of discretion. *In re Condemnation of Certain Rts. in Land*, 974 N.W.2d 103, 111 (Iowa 2022). The trial court abuses its discretion when it exercises it on grounds that are clearly untenable or to an extent that is clearly unreasonable. *Id.* "Misapplying a rule of law is an abuse of discretion." *Id.* Recognizing that the district court has wide latitude in ruling on admissibility of evidence, we will reverse only when an unreasonable decision prejudices the losing party. *Id.*

In awarding damages, the district court accepted one of the calculations submitted by the estate. At trial, the estate offered into evidence Exhibit J, which

calculates damages based one of two assumptions: (1) that Greg farmed Gary's land under a sharecropping arrangement and must reimburse the expenses and costs paid by Gary or (2) that Greg leased Gary's farmland and owes the estate the payments due under the lease. The exhibit also calculates each of those scenarios using two additional variables: (1) whether Greg owned the home he lived in before moving in with Gary or (2) whether he owes rent for the period he lived there.

The estate offered Exhibit J into evidence during the testimony of Barbara (Barb) Martin, who prepared the exhibit with Kathryn (Kathy) Moser. Barb and Kathy are two of Gary's children and co-executors of the estate. Exhibit J lists the sources of the costs used in calculating damages under the four scenarios. Both Barb and Kathy testified that they learned the information in those sources while performing their duties as co-executors. Those sources include Gary's bank statements, property tax records, local rental rates, records of Greg's income, and a Farm Service Agency contract for reimbursement under the conservation reserve program. The calculations for the lease options used the rate that Gary received from other tenants, which was below the market rate.

Greg objected to Exhibit J when it was offered into evidence during Barb's testimony:

> She's testifying as though she's an expert. There's not a proper foundation for that testimony. Secondarily, it's purely argumentative. It's purely making assumptions. It's speculative. It does not include an agreement that Gregory Maxwell made with his father granting him permission and ownership verbally, to be sure, that he could farm the land, buy equipment necessary to farm the land. And for those reasons, Your Honor, we would object to the summary of what she had just testified to in Exhibit A [sic].

The estate responded that Barb testified that Exhibit J was created from her personal knowledge of the records, which she reviewed as co-executor. The estate also argued that Greg's objection went more to the weight and sufficiency of the evidence than its admissibility. The district court sustained Greg's objection based on foundation because "there are records that were relied upon in the creation of that summary that have not been admitted, and I do not know whether those have been provided for examination and use by the opposing party." *See* Iowa R. Evid. 5.1006 (allowing use of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court" if the proponent makes the originals or duplicates available for examination by the opposing party). Exhibit J was never admitted.

In its ruling, the district court found that the evidence shows Greg did not buy the house he claimed to have bought in 1991. Relying on Barb's testimony, it also found that "Gary's purchase of inputs and equipment was consistent with a crop sharing arrangement as opposed to a cash rent model." But it also found that the evidentiary record did not allow for calculation of damages with the necessary specificity. To achieve equity, the court instead opted to award damages under the lease scenario using the rental rates Gary charged his other tenants, which is $797,122.68 less than Barb's sharecropping calculation.[5]

Greg contends the district court erred by relying on Barb's damage calculation in awarding damages to the estate because she is not a farming expert.

---

[5] Barb calculated the estate's damages based on a sharecropping arrangement and Greg not owning the house to be $1,423,520.26. She calculated the damages based on a lease and Greg not owning the house to be $626,397.58.

But her damage calculation adopted by the district court was based solely on the amount of rent that Greg would have paid to Gary if he was charged the same low rate that Gary charged his other tenants, which she knew of as co-executor of the estate. The expert witness that Greg called to testify about rent only testified that Gary undercharged Kathy for leasing farmland. The same low price was used in determining the damages for unjust enrichment based on the amount of land Greg farmed. Because the damage calculation is within the permissible range of the evidence, we affirm the $626,397.58 judgment for unjust enrichment.

**IV. Greg's Claims Against the Estate.**

Finally, Greg contends the court erred by denying his claims against the estate. He argues the estate is liable to him for payment of care services he provided to Gary.

The district court found that there was no enforceable contract between Gary and Greg to compensate Greg for caretaking services at an hourly rate. The court further found that even if there was a contract, Greg did not perform under its terms. The court found that there was a valid contract, its purpose was to allow Gary to live the rest of his life in his home. Because Gary entered a nursing facility in June 2018, Gary's performance failed.

Greg's argument faces the same impediment as his argument against the unjust-enrichment award. Because the district served as the fact finder, we afford its findings deference. Substantial evidence supports the court's findings on this issue.

**V. Summary.**

The district court erred by precluding Greg from litigating his liability for conversion in an amount over $1000.  But substantial evidence supports an award of $626,397.58 on the estate's unjust-enrichment claim.  We therefore affirm the district court's judgment as modified.

**AFFIRMED AS MODIFIED.**